R. L. SMITH, JR., AND WIFE, BETTY JO SMITH, Complainants,

*v.*

PICKWICK ELECTRIC COOPERATIVE, Defendant.

367 S.W. 2d 775.

*(Jackson,* April Term, 1963.)

Opinion filed May 10, 1963.

Wm. W. Lackey, Savannah, for complainants.

Will Tom Abernathy, Selmer, for defendant.

64

MR. JUSTICE WHITE delivered the opinion of the Court.

We have granted certiorari in this case in response to petitions therefor filed by all parties to this litigation and the matter has been fully presented in oral argument.

The original bill was filed on the 15th day of September, 1958 by R. L. Smith, Jr. and thereafter, by leave of the Court, the same was amended so as to include his wife, Betty Jo Smith, as a complainant against Pickwick Electric Cooperative, a corporation duly organized and existing under and by virtue of Chapter 176 of the Public Acts of 1937 the "Electric Cooperative Law" and now carried in T.C.A. 65-2501 et seq.

One of the main purposes of the corporation is to supply electricity to its members at reasonable rates.

The bill prayed that a mandatory injunction be issued requiring the defendant to furnish them with electric service and further that a prohibitory injunction be ganted prohibiting it, the defendant, from taking any further or additional steps toward the erection and con-

strution of a transmission line across their premises located on the west side of U. S. Highway 45 about two miles south of Selmer, Tennessee.

In their bill the complainants alleged they had purchased a lot from one D. A. Cox upon which they had contsructed a new home. The bill further averred that prior to the purchase of the lot the complainants had been informed by the seller that the defendant had been negotiating with him for an easement over the lot in question to permit it to put a transmission line across the lot. R. L. Smith, Jr., himself, had talked to representatives of the defendant about the proposed transmission line but no agreement had been reached at the time he purchased said lot under a warranty deed from the grantor, Cox.

The complainants were at that time members of the defendant Cooperative holding membership No. 13737 and just prior to their moving into the house erected on said tract of land they made application at the office of the defendant for electric service and while there the question arose about the granting of the right to the defendant to cross the property in question with a transmission line.

As a result of this conversation, a dispute arose between the complainants and the defendant about the location of said line. Neither party would yield to the entreaty of the other. This resulted in the refusal of the complainants to permit the erection of transmission line across their property and in turn the defendant refused to supply electric service to the complainants.

The bill averred that the defendant's refusal to supply them with electricity was unreasonable, arbitrary, illegal

and discriminatory and further they were not bound to furnish to the defendant, without cost, a right of way across their land for a transmission line, even though they agreed to do so in a signed application for membership in which they had agreed to be bound by the charter, By-laws and rules and regulations of the Cooperative.

The injunctions as prayed were issued and served on the defendant Cooperative on September 15, 1958 and in obedience thereto the defendant furnished electric current within the day that the injunction was issued but not in the manner which complainants desired that it be furnished. They wished that the service would come to them from the north across the adjoining property owner and not from the east in the manner in which the defendant had served them. In the course of serving the complainants with electricity and in keeping with the policy of the Cooperative some small trees on the complainants' property were cut under the line as it crossed the property of the complainants. They were cited for contempt for this act of cutting trees, but upon the hearing the citation was dismissed by the Chancellor.

An amended and supplemental bill was filed by the complainants in which they sought several modes of relief. Included among them was that the defendant be required to remove the poles and lines which were serving the complainants and that they be served in the manner in which they thought they should be served and that the defendant be required to answer to them in damages for the cutting of the trees in question.

The defendant answered the original bill, as amended, and in its answer it asked that the same be considered as a cross-bill. It sought a declaration of rights between

the complainants and the defendant and it further asserted that it was not obligated to serve the complainants under Article 1, Section 13 of the By-laws unless and until it was furnished necessary easements across their land without cost.

The case was heard by the Chancellor upon stipulation of proof and certain other facts introduced at the hearing on the contempt proceeding.

On August 27, 1960, the Chancellor filed a written findings of fact in which he said there was little dispute about the facts of the case and that the real controversy revolved around the interpretation of the facts and the legal conclusions to be drawn therefrom. The Chancellor found:

"There is no doubt that the complainants' predecessor in title, D. A. Cox, was in negotiation with the defendant as far back as 1956 with reference to the construction of transmission lines over the land here involved. Nor is there any doubt that the defendant had taken definite steps to include such construction in its plans for future expansion. However, there were no reservations or conditions in Cox's deed to the complainants. Nor was there any memorandum in writing between any of the parties. This, the court thinks justified a holding that the complainants' defense of the Statute of Frauds is good.

"Notwithstanding this defense, the complainants are contractually bound by Section 13 of the By-laws of the defendant to grant to the defendant, without charge, easements over their land for transmission and distribution lines. Moreover, the complainants' own testimony discloses the very significant facts that (1) they

had discussed with their predecessor, Cox, the plans of the defendant for the erection of transmission lines; (2) they had negotiated with the defendant with reference to the points at which the poles would be placed; and (3) the defendant had moved one or more poles farther away from complainants' dwelling in an effort to satisfy them.

"These revealing facts do not destroy the effect of complainants' technical plea, but they do destroy their charge of fraud against the defendant.

"The Court is unable to agree with the defendants' request for a declaration of rights as stated in paragraph 2 of the prayer of its cross-bill. The court does feel justified, however, as hereinabove indicated, in holding that under its prayer for general relief and under Section 13 of its by-laws the defendant is entitled to a charge, an easement for the construction of transmission lines.

"Notwithstanding the court's feeling that the mandatory injunction was improvidently sought and improvidently granted, he does feel that under the circumstances the complainants were entitled to have their premises served with electricity. This right, however, does not supersede or transcend the right of the defendant to an easement over complainant's land. A little more patience, a little more and further negotiations with a disposition on the part of both parties to consider the viewpoints of the other, doubtless would have made this litigation unnecessary.

"Since the mandatory injunction was issued, served, and has been obeyed, the court feels that it should stand and that the prohibitory injunction should be

dissolved to the end that the defendant may proceed with its program without further interruption.

"This brings us to what seems to be the only remaining issue. The fact that the complainants obligated themselves contractually to grant the defendant an easement for the construction of its transmission line does not carry with it an obligation to waive compensation for any damages which they may have sustained incident to the construction of the transmission line. There is some proof indicating some damage. Therefore, the interlocutory decree will provide for the ascertainment of such damages, if any. An adjudication of the costs will await a final decree."

Based upon this finding a decree was entered by the Chancellor in which it ordered:

1. The defendant's prayer for a declaration of rights in its cross-bill be denied.

2. The complainants were contractually bound and obligated to grant the defendant, without charge, easements over their land for transmission and distribution lines under Section 13, Article 1, of its by-laws.

3. The prohibitory injunction was dissolved and the defendants were permitted to proceed with the construction of the transmission line without further interruption. The mandatory injunction (to funish electric service) was made permanent.

4. A reference was ordered to the Clerk & Master to determine the damages, if any, which the complainants had suffered incident to the construction of the transmission lines across the complainant's property by the defendant.

From this decree the complainants and the defendant both appealed to the Court of Appeals, the Chancellor having permitted them to do so in the exercise of his discretion.

The Court of Appeals held that Section 13 of Article 1 under the By-laws of the defendant corporation was illegal, void and unconstitutional. This section reads as follows:

"Members shall, without charges to the Cooperative, grant to it easements over land owned by them for the transmission and distribution lines of the Cooperative, and the Board of Trustees may require from applicants for membership the return of any payments previously made to such applicants for easements."

The Court of Appeals held such a provision was violative of Section 21 of Article 1 of the Constitution of the State of Tennessee, which provides:

"That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

To the same effect is amendment No. 5 to the Constitution of the United States, the pertinent portion of which is:—"* * * nor shall private property be taken for public use, without just compensation."

■ ■ We agree with the Court of Appeals that the taking of one's property for public use without just compensation therefor would be violative of the constitutional rights preserved as aforesaid. However, this means a taking by force under the laws of eminent domain. There was no taking of the defendant's property

in that sense. There is nothing contained in either of the provisions of the Constitution aforesaid which would prohibit parties from entering into contracts, otherwise lawful, with reference to granting easements over land. This defendant is a Cooperative in the sense that a group of users of electricity entered into an agreement with it for the mutual benefit of all of its members. In doing this each member of the association agreed to be bound by the By-laws, rules and regulations of such association.

The compensation or the consideration passing to these complainants for the use of their land to construct a transmission line was, of course, the benefits they would receive in using the electric current provided for them and others through the offices of this cooperative. We know of nothing in the law that would prohibit the complainants and the defendant from entering into a contract, which they did, whereby they, the complainants, would permit the defendant cooperative to erect power lines and transmission lines across their property and in consideration thereof the defendant was to provide electricity for use by the complainants at rates consistent with sound business practices and in accordance with the Act under which said cooperative was organized. We believe that the By-law set out at Section 13 of Article 1 above is a reasonable by-law and is within the permissive limits of law.

A contract has been defined over the years as an agreement, upon sufficient consideration, to do or not to do a particular thing. This definition finds support in Black's Law Dictionary, Fourth Edition, Blackstone's Commentaries, *Furman v. Nichol,* 43 Tenn. 433, 445. This case added to the general definition of a contract that to be effective it also had to be entered into between

"competent persons," meaning persons not under disability. Of course, this was necessarily implied in the generally accepted definition of a contract. It seems to us that the contract in this case was made by competent parties upon a sufficient consideration and for the purpose of giving effect to the By-laws of the Association of which the complainants became voluntary members.

In exercising the right granted under said By-laws, the defendant should do so in a way and manner that would provide electric power for the complainants and other members of the Cooperative but at the same time to be considerate in placing such lines across the complainants' property so as to damage their property as little as possible.

It is difficult for Courts to state with mathematical certainty just where lines should be placed across one's property. It is the essential meaning, however, of said By-laws aforesaid that the Cooperative shall be granted the rights to easements over the land owned by its members for transmission and distribution lines. This would not give to the Cooperative, however, the authority and right to destroy the property of a member or buildings erected thereon without paying just compensation therefor. If in the erection and construction of said transmission and distribution lines over the property of a member results in destruction of trees or improvements on member's property, then, of course, he should be paid just compensation for whatever incidental damage he may have suffered.

In the case of *Chumbley v. Duck River Electric Membership Corporation,* 203 Tenn. 243, 310 S.W.2d 453, the Court was dealing with a situation wherein a suit was

brought to compel the Cooperative to furnish electricity to his property, which it had declined to do unless it be allowed to locate the line along the right of way across a valuable part of complainant's property which would require the cutting of a large portion of ancient and valuable trees. The complainant charged that he had offered alternative routes less damaging to complainant's property but the defendant refused to furnish the requested service. He prayed for a mandatory injunction requiring the defendant to so furnish the service. The Chancellor sustained a demurrer and dismissed the bill upon two grounds, but particularly upon the failure of the bill to aver that the complainant was a member of said corporation or that he had ''complied with the reasonable rules and regulations and has become entitled to the privilege of membership.''

The Court in passing upon the adequacy and validity of the demurrer said:—''We are constrained to agree with the above statement of the defendant.''

The effect of the holding in that case is that the electric cooperative formed pursuant to T.C.A. sec. 65-2501 et seq. was not a public service corporation and was under no duty to extend facilities where ''complainant did not aver that he was a member of the corporation or that he had complied with the rules and has become entitled to the privilege of membership.''

■■ It seems to us in the case at bar that the complainants, being members of the defendant Cooperative, are entitled to be served by the defendant. The complainants are obligated to comply with the reasonable rules and regulations of this Association of which they are members. We believe that the By-law in question

is a reasonable rule or regulation but that in exercising the right given thereunder the defendant should do so on a reasonable and equitable basis taking into consideration the existing facts and circumstances and constructing the lines in such a way and manner so as not to cause undue harm or injury to the complainants.

In the ordinary case the Courts would be most reluctant to undertake the supervision of like matters raised in this case, but in the interest of the application of the principles of equity under the factual situation shown to be existing in this case we believe that the Chancellor reached the correct conclusions. His final decree in ordering a reference as therein set out is proper in this case.

In the preparation of this opinion we have considered all of the assignments of error advanced by all parties in this cause and have disposed of all of them on a general rather than a specific basis because we feel this procedure to be proper in this case.

The opinion of the Court of Appeals is reversed and the action of the Chancellor is affirmed. This case is reversed and remanded to be proceeded with by the Chancellor in accordance with this opinion. The costs of this appeal are adjudged against Pickwick Electric Cooperative.