**Royce SMITH, Plaintiff-Appellee,**

**v.**

**TRI–COUNTY ELECTRIC MEMBER-SHIP CORPORATION,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 13, 1985.

Application for Permission to Appeal
Denied by Supreme Court
April 22, 1985.

R.K. Witcher, Jr., Lafayette, for defendant-appellant.

Thomas H. Bilbrey, Lafayette, for plaintiff-appellee.

Carlos C. Smith, Frederick L. Hitchcock, R. Christine Mabe of Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, for amicus curiae.

## OPINION

FRANKS, Judge.

Plaintiff's suit, predicated upon the discontinuance of his electric utility service by defendant and tried before a jury, resulted in a judgment of compensatory damages in the amount of $532.92, and punitive damages in the amount of $25,000.00 against the defendant.

On June 30, 1983, Debbie Hix,[1] who owed defendant utility a delinquent account in the amount of $692.68, went to defendant's office and requested electrical service in the name of Roy Smith at a residence subject to service by defendant. A representative of defendant advised that Roy Smith, or a close relative, would have to sign an application for the service. On the same

---

1. Hix and her minor children had been residing with Smith at another address for approximately two months.

day, Roy Smith, the plaintiff, went to defendant's office and defendant's representative explained defendant's policy of not furnishing electrical service when anyone indebted to defendant planned to live in the residence.[2] The representative also informed plaintiff that Debbie Hix, who had initially requested the service, owed a delinquent account. Plaintiff advised defendant's representative that Debbie Hix would not be living at the residence and signed an application for service which recites, in pertinent part: "This application is subject to the Corporation's Rules and Regulations and By-Laws, copies of which are open for inspection at the office of the Corporation; and that these Rules and Regulations, and By-Laws are a part of this agreement."

The representative further informed plaintiff defendant would set the meter but if it was determined that Debbie Hix was in fact residing in the residence, the electric service would be discontinued. After the meter was set, on July 6, 1983, an employee of the defendant determined Debbie Hix was living at the residence and, on July 7, 1983, the electric service was terminated. On that occasion, Debbie Hix was present at the residence and was informed the meter was being removed. This suit was filed five days later.

The trial judge submitted to the jury the issue of whether the rule relied upon by defendant to terminate plaintiff's electrical service was reasonable; however, this determination should have been made by the trial judge as a matter of law. Where the facts are not in controversy,

whether a rule or regulation of the public utility is reasonable is a question of law for determination by the court. *Smith v. Pickwick Electric Coop.*, 212 Tenn. 62, 367 S.W.2d 775 (1963); *Jones v. Nashville*, 109 Tenn. 550, 72 S.W. 985 (1902).

Defendant is obligated to furnish its service to its members without arbitrary discrimination. T.C.A., § 65–24–109.[3] The Supreme Court has held members of electric cooperatives are entitled to service from the cooperative upon compliance with "reasonable rules and regulations" of the cooperative. *Pickwick Electric Coop., supra; Chumbley v. Duck River Elec. Corp.*, 203 Tenn. 243, 310 S.W.2d 453 (1958).

The Supreme Court in *Farmer v. Nashville*, 127 Tenn. 509, 156 S.W. 189 (1912), declared an ordinance void which denied water service to a tenant of a landlord who had a delinquent water bill at the location. In discussing the restrictions upon a municipality or utility in making rules of this nature, the court said:

> The distinction between the general power of a legislative body to make laws and the special power of a municipal corporation to enact by-laws is recognized by our authorities. In respect of the latter, the corporate council is restrained to such matters as are not at variance with the general laws of the State, are reasonable, and adapted, to, or proper for, the purposes of the corporation. In *Long v. Taxing District*, 7 Lea [134] 137, 40 Am.Rep., 55, the court said:
>
> > "Whenever a by-law seeks to alter a well-settled principle of the common

2. The regulation, in the form of a written policy since 1967, states:
Meter sets for Delinquents—
Meter shall not be installed for any consumer who is indebted to the Cooperative, nor may meter be set in name of another person when consumer indebted to Cooperative lives or plans to live in such residence.

3. T.C.A., § 65–24–109. *Corporate membership— Terms and conditions.*—(a) Except as hereinafter provided, the corporate purpose of each corporation shall be to render service to its members only.
(b) Any person may become and remain a member if such person shall use energy sup-

plied by such corporation and shall comply with the terms and conditions in respect to membership contained in the by-laws of such corporation, which terms and conditions shall be nondiscriminatory. Any person who shall agree to use energy supplied by the corporation from an existing line or from a line the construction of which has been authorized or commenced by the corporation may be admitted to membership in the corporation prior to such use upon complying with the other terms and conditions with respect to membership contained in the certificate of incorporation or in the by-laws. The membership fee of the corporation shall be fixed by the board of directors.

law, or to establish a rule interfering with the rights of an individual or the public, the power to do so must come from plain and direct legislative enactment. No implied power to pass by-laws, and no express general grant of the power, can authorize a by-law which conflicts either with the national or State constitution, or with the statutes of the State, or with the general principles of the common law adopted or in force in the State. Ordinances must be consistent with public legislative policy, may regulate, not restrain, trade, and must not contravene common right. . . ."

And in speaking of a by-law of this defendant with respect to the relation of its water service to its inhabitants, this court has said:

"It may be said generally that ordinances must be consonant with the constitution and statutes of the United States and of the State, and with the general principles of the common law. They must be authorized by the charter of the corporation or general laws applying thereto, and consistent with the objects and purposes of its creation. They must be general, and applicable alike to all persons and property affected by them, and certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them. They must be just. And they should be adapted to the locality and affairs which it is intended they shall control and affect. They must not be harsh and oppressive. They must not discriminate in favor of or against any class of persons or property, but must be general in their nature, and impartial in their operation and effect." *Jones v. Nashville*, 109 Tenn. 558, 72 S.W. 985. 127 Tenn., at 515–7, 156 S.W. 189.

■ It is argued the rule under consideration is reasonably necessary to combat the so-called practice of rotation, *i.e.*, a customer contracts for electrical services, defaults on payment, and then enjoys the benefit of new electric service contracted by a friend or relative. The rule, as applied, encompasses a broader class of individuals than those who practice the rotation scheme. The rule denies an individual the right to contract for electrical service at any location in the area served by the defendant under all circumstances and relationships so long as another individual, who owes the defendant for electrical services, resides on the premises where electrical services are sought. The classification, we believe, is unreasonable and arbitrary. In *Davis v. Weir*, 497 F.2d 139 (5th Cir.1974), the court invalidated an ordinance of the City of Atlanta similar in substance to the ordinance voided by our Supreme Court in the *Farmer* case. The court observed:

A collection scheme, however, that divorces itself entirely from the reality of legal accountability for the debt involved, is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor. The City has no valid governmental interest in securing revenue from innocent applicants who are forced to honor the obligations of another or face constructive eviction from their homes for lack of an essential to existence—water. "The fact that a third-party may be financially responsible for water service provided under a prior contract is an irrational, unreasonable and quite irrelevant basis upon which to distinguish between otherwise eligible applicants for water service." *Davis v. Weir, supra*, 359 F.Supp., at 1027. The Department's actions offend not only equal protection of the laws, but also due process. [Citations omitted.] 497 F.2d, at 144–5.

■ As in the case of water, electric utility service is a "necessity of modern life" and the defendant is obligated to provide service to all of its members "alike, without discrimination, and without denial, except for good and sufficient cause." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 at 11, 98 S.Ct. 1554 at 1561, 56 L.Ed.2d 30 (1978). The cases cited by defendant and *amicus* in the briefs are

inapposite and not controlling. The instant case is distinguishable in that plaintiff contracted for the electrical service, was using the service, was not delinquent, owed the defendant no bills for prior service at any location, and had no connection with the delinquent customer when her bills were incurred.

■ Plaintiff has not appealed as to the amount of compensatory damages awarded and we pretermit defendant's issue relating to the trial court's charge to the jury concerning whether or not the rule relied upon by defendant was reasonable. We conclude the submission of the issue to the jury was harmless error, T.R.A.P., Rule 36, as there is ample material evidence to support the award of compensatory damages. In this connection, *see* Annot., 108 A.L.R. 1174, *Measure and amount of damages for breach of duty to furnish water, gas, light, or power service.*

■ Defendant insists plaintiff's application for membership, coupled with defendant's acceptance, constituted a contract wherein defendant would furnish electric utility service to plaintiff and, assuming *arguendo*, a breach of the contractual duty, punitive damages cannot be allowed in breach of contract actions. We cannot agree. The action was one sounding in tort and not purely a breach of the terms of the contract. When the rule, which we conclude is unreasonable, is elided from the contract between the parties, the termination of plaintiff's service was not in accordance with the contract but independent of and against the contract and, under T.C.A., § 65–24–109 and *Trigg v. Middle Tennessee Electric Membership Corp.*, 533 S.W.2d 730 (Tenn.App.1975), the utility has a duty to furnish electric services to its members and a breach of that duty is tortious conduct. *See Capital Electric Power Association v. Hinson*, 92 So.2d 867 (Miss. 1957).

■ Punitive damages may be awarded in cases of fraud, gross negligence, or where a wrongful act is done with a bad motive, or where there is willful misconduct or entire want of care so as to raise a presumption of a conscience indifferent to the consequences. *Inland Container Corporation v. March*, 529 S.W.2d 43 (Tenn. 1975). The evidence [4] does not establish a basis for punitive damages. Plaintiff obtained his electrical service by artifice and malice or bad motive cannot be inferred from defendant's termination of the service. At the time the service was connected, plaintiff was advised the service would be disconnected if Debbie Hix was found to be residing with plaintiff and, upon terminating plaintiff's service in reliance on its long-standing rule, these facts cannot reasonably be considered malicious nor willful misconduct by defendant since the service would not have been furnished initially had plaintiff disclosed the facts that formed the basis for its termination.

■ Where punitive damages are sought, the pleadings must properly disclose circumstances which justify an allowance of such damages. 22 Am.Jur.2d, *Damages*, § 331, at 433. During the trial, plaintiff called as a witness, Charles Mayhew, who served as general manager of the defendant utility but was retired at the time of trial, and was permitted, over the objection of the defendant, to cross-examine Mayhew about a suit filed in Chancery Court at Gallatin styled *Jerry Donald Spears v. Tri-County Electric Membership Cooperative*, wherein a final judgment was entered against the utility on September 22, 1975. Excerpts from a discovery deposition given by Mayhew purportedly in that case were read to the jury and a copy of the final decree was offered in evidence. The decree awarded the plaintiff damages in the amount of $100.00 and a temporary injunction previously issued in the case was made permanent. Plaintiff insists this evidence was properly admitted because in the prior lawsuit defendant had relied on the rule involved in this case in terminating electric utility service and the chancellor in his ruling, by implication, determined the rule to be unreasonable and

---

**4.** "Evidence" does not encompass the evidence        we rule inadmissible, *infra.*

enjoined its enforcement. This theory, if timely advanced and established by evidence, would properly be considered by the triers of fact on the issue of punitive damages; however, plaintiff did not plead this theory or mention the prior case in his pleadings. Moreover, the record does not establish the same factual issue involving the rule in the instant case was litigated in the prior chancery case.

■ The general rule is former testimony as an exception to the hearsay rule may be allowed into evidence at trial, including testimony given in a prior hearing, whether a deposition, preliminary hearing or plenary trial. The rule, however, is limited by the further requirements that the declarant must be unavailable as a witness and the issues and, in this jurisdiction, the parties, must be the same. Paine, *Tennessee Law of Evidence,* § 50.

■ The evidence pertaining to the Sumner County Chancery case was improperly admitted. Upon excluding this evidence from consideration, there is no material evidence to establish a basis for an award of punitive damages in this case. Accordingly, we affirm the judgment for compensatory damages and reverse and dismiss the award of punitive damages, and remand.

The costs of appeal are assessed one-half to each party.

TODD, P.J. (M.S.) and LEWIS, J., concur.