# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

CAROLYN WHITEMORE,           )
                             )
          Plaintiff/Appellee,    ) Hardeman Circuit No. 8874
                             )
VS.                          ) Appeal No. 02A01-9901-CV-00002
                             )
DIANE JONES,                 )
                             )
          Defendant/Appellant.   )

**FILED**

**July 2, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

### APPEAL FROM THE CIRCUIT COURT OF HARDEMAN COUNTY
### AT BOLIVAR, TENNESSEE
### THE HONORABLE JON KERRY BLACKWOOD, JUDGE

**JEANNIE KAESS**
Bolivar, Tennessee
Attorney for Appellant


**W. BOYETTE DENTON**
**DENTON AND CARY**
Bolivar, Tennessee
Attorney for Appellee

**REVERSED & DISMISSED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Defendant Diane Jones ("Jones" or "Appellant") appeals the judgment of the trial

court awarding Plaintiff Carolyn Whitemore ("Whitemore" or "Appellee") the sum of $1,250.00 as reimbursement for money given to Jones by Whitemore for investment in an illegal "pyramid scheme."

## I. Factual and Procedural History

In May 1997, Whitemore invested some money in a game called "Friends Helping Friends." The game consisted of 32 squares at the level of vice-president, each square costing $500.00, sixteen squares at the level of executive vice-president, eight at the level of president, and four at the level of chairperson. Players move up the pyramid as new members are brought in and the persons at the chairman level profit from the new squares being sold. Whitemore's first investment was in the amount of $250.00, and her second investment was in the amount of $1,000.00.

Whitemore and Jones worked together at Nat Winston Developmental Center. Whitemore asked Joan Young ("Young"), a coworker, for information about the game. Whitemore asked some questions that Young could not answer, so Young referred Whitemore to Jones. Young warned Whitemore that she might lose her money because Young's brother, a police officer, knew about the game.

Whitemore and Jones spoke at work and Jones answered questions about the game. Certain literature regarding the game was introduced at trial. The literature addressed questions regarding the game. The literature explained, among other things, that the game was not illegal, the reasons for the games being cash only, and that a player could decide to leave the game and get his/her money back. Jones testified that she relied on this written material to recruit new members.

Whitemore initially invested $250.00 for one-half of a square. Whitemore gave the money to Young and asked her to pass it on to Jones, who passed it on to Sandra Foster, who was the chairperson of the game. Whitemore understood her investment would be

2

given to the chairperson, although she did not know who the chairperson was at that time. Whitemore had no contact with anyone other than Young and Jones.

Jones did not have a space on the game board. In the past, Jones had purchased a square at the vice-president level and as new members bought squares, she was promoted to chairperson. Her investment yielded about $2,000.00 and she reinvested half of that in another game. She did not have an investment in the game in which Whitemore played.

Whitemore later purchased two additional squares. Jones alleged Whitemore told her that Ronald Whitemore had given her $500.00 for a square and Nicole Whitemore had given her $500.00 for a square. Jones put $500.00 in each of two envelopes and marked the initials R.W. on one and N.W. on the other. Jones gave each of these envelopes to the chairperson, Sandra Foster. Whitemore contends that the $1,000.00 was for two more squares for herself, although some of the money came from her sister.

Sometime later, Jones was invited to a meeting at the community center where Hardeman County Sheriff, Cecil Jeter, spoke to the group and said the game was a pyramid scheme and it was illegal. The people running the game shut it down.

On November 10, 1997, Whitemore caused a civil warrant to be issued in general sessions court, charging Jones with "debt in the amount of $1,250.00." Chairperson, Sandra Foster, was not named as a defendant in the suit. Foster testified at trial to receiving, from Jones, the money invested by Whitemore. Foster testified that Whitemore had not contacted her nor asked Foster to refund her investment.

On Jan.7, 1998, the general sessions court granted a judgment in favor of Whitemore in the amount of $1,250.00. Jones appealed and the case was tried before Judge Joe Walker. On March 17, 1998, Judge Walker filed written findings of fact and granted judgment in favor of Whitemore in the amount of $1,250.00. On April 14, 1998,

3

Jones filed a Motion for New Trial which was denied by the court on May 28, 1998. This appeal by Jones followed.

## II. Recovery against Appellant Jones

.

This case originated in the General Sessions Court of Hardeman County and was appealed by Jones to Circuit Court. As a result, the record before us does not contain a formal complaint. The order entered by the Circuit Court does not specifically set forth the grounds upon which recovery was granted to Whitemore (i.e. breach of contract, unjust enrichment, fraud). However, at oral argument on this matter, counsel for Appellee indicated that the theory of recovery set forth at the trial court was a breach of contract theory.

The trial court made the following factual findings: The defendant, Diane Jones, was friends with the plaintiff and they had a conversation regarding a game of friends helping friends. Plaintiff invested a total sum of $1,250.00 in the game. The proof was uncontroverted that the money was given to Jones. The initial investment of $250.00 was delivered to a friend, who delivered it to Jones for investment. Jones testified that she had delivered the money to the chairperson on that game. The chair, Sandra Foster, testified that she received the money but did not know Whitemore. Doug Brown, investigator with the Sheriff's department testified the game was illegal. The trial court then found that the "investment" was an illegal scheme, and that Whitemore was entitled to judgment against Jones in the amount of $1,250.00.

Because this case was tried by the court sitting without a jury, we review the case de novo upon the record with a presumption of correctness of the trial court's findings of fact. Conclusions of law are reviewed de novo with no presumption of correctness. T.R.A.P. 13(d).

Upon a careful inspection of the record, and the statements of evidence filed by the

parties, we cannot find evidence to support Whitemore recovering her investment from Jones on a breach of contract theory. Although Whitemore and Jones offered conflicting testimony on who initiated the conversation about the game, it is clear that the parties had a conversation in which Jones explained the game to Whitemore. Jones explained the game to Whitemore because she had first-hand knowledge of the game as she had played it herself in the past.

Although Whitemore delivered the money to Jones for her investment in the game, Whitemore understood that her money would be given to the chairperson, who was at the top of the board. Jones did not keep the money given to her by Whitemore. Jones merely delivered Whitemore's money to the chairperson, Sandra Foster, who testified that she received the money. Furthermore, Jones did not have a space on the game board in which Whitemore invested and therefore did not benefit in any way from Whitemore's investment.

As part of the explanation of the game, Jones informed Whitemore that she could get her money back at any time. The literature describing the game stated that a person could get money returned by asking the chairperson to refund the investment. When the players of the game were informed by the sheriff's department that the game was illegal, the game was voluntarily shut down. Foster testified that Whitemore did not contact her and did not ask Foster to refund her investment. Whitemore asserts that she did not know the identity of the chairperson until this matter went to court. However, it is clear that Whitemore understood that Jones was not the chairperson of this game. There is no testimony in the record that Jones intentionally concealed the identity of the chairperson from Whitemore. We can further find nothing in the record to suggest Whitemore ever inquired of Jones the identity of the chairperson.

A contract is an agreement, upon sufficient consideration, to do or not to do a particular thing. Smith v. Pickwick Elec. Co-op., 367 S.W.2d 775 (Tenn. 1963). A contract may be either express or implied, written or oral, but must result from a meeting of minds in mutual assent to terms, and must be based upon sufficient consideration. Johnson v. Central Nat. Ins. Co. of Omaha, Neb., 356 S.W.2d 277 (Tenn. 1961).

5

There does not appear to be a meeting of the minds that Jones would have any responsibility for Whitemore turning a profit on her investment. Nor does there appear to be a meeting of the minds that Jones would be responsible for the return of Whitemore's money if Whitemore chose to drop out of the game. Both parties testified that Jones explained the game to Whitemore. Whitemore was aware that Jones was not the chairperson of the game. Whitemore was aware that Jones was going to deliver the money to the chairperson.

Even if Whitemore somehow expected Jones to make sure her investment turned a profit or expected Jones to guarantee a refund of her investment, there does not appear to be valid consideration. An enforceable agreement requires consideration flowing to both parties. Frank Rudy Heirs Associates v. Moore & Associates, Inc., 919 S.W.2d 609 (Tenn.App. 1995). Jones received nothing from Whitemore which could be found to be consideration. The money which Whitemore gave to Jones was to be delivered to the chairperson of the game, and it was in fact delivered. Whitemore made no promise to Jones nor had any obligation to Jones. Jones was not a member of the particular game in which Whitemore invested and therefore did not stand to receive any indirect benefit from Whitemore's investment.

It appears to this court that Jones merely explained to Whitemore how the game worked and was the conduit for delivery of the investment from Whitemore to Sandra Foster, chairman of the game. We do not find any contractual relationship between Whitemore and Jones. Additionally, Whitemore cannot recover against Jones on a quasi-contract theory such as unjust enrichment, as Jones did not receive any benefit, direct or indirect, from Whitemore's investment. If Whitemore's theory of recovery is based upon Jones serving as an agent of the chair, no proof of such a relationship was set forth in the record or argued on appeal.

For all the foregoing reasons, we find that the trial court erred in awarding Whitemore a judgment against Jones.

### III. Conclusion

_____

The judgment of the trial court is hereby reversed and the case is dismissed. Costs of this appeal are taxed to Appellee, for which execution may issue if necessary.

_____

HIGHERS, J.

CONCUR:

_____

CRAWFORD, P.J., W.S.

_____

LILLARD, J.

7