# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 20, 2002 Session

## DANIEL P. GOODWIN, ET AL. v. JOHN E. DUNLAP

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002768-00      The Honorable D'Army Bailey, Judge**

---

**No. W2002-00014-COA-R3-CV - Filed December 10, 2002**

---

This is a legal malpractice action originally filed by individual plaintiff and a corporation. The individual plaintiff was acting *pro se* for himself and also for the corporation. The trial court granted summary judgment to defendant based upon his affidavit that he complied with the standard of care representing the corporate plaintiff, that he had no attorney/client relationship with the individual plaintiff. No countervailing affidavit concerning the standard of care was filed by the plaintiffs and the dismissal of the corporation's case was also premised on the rule that a corporation cannot act *pro se* by a nonlawyer agent. Individual plaintiff's affidavit does not specifically refute defendant's affidavit concerning no attorney-client relationship between the individual plaintiff and defendant. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Daniel P. Goodwin, *Pro Se*

James L. Kirby, Michelle M. Drake, Memphis, For Appellee, John E. Dunlap

### OPINION

This is a legal malpractice case. Plaintiff Daniel P. Goodwin ("Goodwin"), acting ***pro se*** and on behalf of WinCor, Inc. ("WinCor")[1], filed a complaint against defendant-attorney John E.

---

[1] In his Motion to Rehear, Alter or Amend Summary Judgment, or in the Alternative, Motion for New Trial, Goodwin stated that he erred in listing WinCor, Inc. as a party to the lawsuit because "it was only intended that Daniel Goodwin be the sole Plaintiff in the case, but that WinCor, Inc. be listed within the body of the complaint not as a party."

(continued...)

Dunlap ("Dunlap") for damages caused by Dunlap's alleged "failure to perform and represent the basic needs to benefit his clients." Goodwin is a beneficiary of WinCor stock and a partial owner of an irrevocable trust hereinafter referred to as The Goodwin Family Trust. At the time this controversy arose, Goodwin was also a holder in due course of mortgage notes on two WinCor owned properties. These properties were located in Shelby County, Tennessee, and DeSoto County, Mississippi respectively. Goodwin asserts that Dunlap was aware of his position as a third party beneficiary and creditor of WinCor.

Dunlap is an attorney duly licensed to practice law in the State of Tennessee, and Memphis, Shelby County, Tennessee.

The record in this case is littered with multiple amended complaints and revised statements of facts filed by plaintiff. Because the pleadings and brief filed by Goodwin present a chaotic and often difficult to decipher account of the underlying facts, we are forced to piecemeal together the factual basis of the case at bar. From our reading of the record and the briefs submitted by the parties, we find the relevant facts, viewed in the light most favorable to plaintiff, as follows.

On December 1, 1998, Dunlap was retained by C. Eugene Goodwin ("President"), President of WinCor, for the express purpose of representing WinCor in a bankruptcy action.[2] According to Dunlap's affidavit, filed in support of his motion for summary judgment, President directed Dunlap to prepare a Chapter 11 Bankruptcy Petition, a disclosure statement, and a Chapter 11 plan on behalf of WinCor. In his affidavit, Dunlap further testified that no attorney-client relationship existed between plaintiff and defendant, although his retainer fee was allegedly financed through funds provided by Goodwin. Plaintiff Goodwin disputes Dunlap's limited view of his representation, and noted in his Statement of Facts, filed *after* the trial court's ruling on Dunlap's summary judgment motion, that

> Defendant's legal representation was always to include the collective interests of the beneficiaries of WinCor, Inc., who are one and the same as the family members of the Goodwin Family Trust, and the individual personal interests of Plaintiff Daniel Goodwin with respect to the Defendant's protection of the properties that were owned by WinCor, Inc. Specifically, Defendant was made aware that Plaintiff

---

[1](...continued)

In response to Goodwin's motion to dismiss WinCor as a party appellant, this court filed an order dismissing WinCor's appeal and confirming the parties' shared position that WinCor has never been an appellant in this case. For the purposes of this opinion, Goodwin is the lone appellant.

[2] Goodwin stated in an amendment to his original complaint that Dunlap was specifically retained to stop foreclosure proceedings against twenty acres in Shelby County owned by WinCor, Inc., thereby protecting the interests of the shareholders of WinCor, Inc. and the beneficiaries of the Goodwin Family Trust. In a memorandum opposing Dunlap's motion for summary judgment, Goodwin noted that the "sole purpose for retaining Mr. Dunlap was to protect properties from foreclosure by InSouth Bank until another sale could be consummated."

Daniel Goodwin held mortgages on two properties that were owned by WinCor, Inc., and involved in foreclosure proceedings. Defendant knew that Plaintiff's interest, and the interest of WinCor, Inc. were the same with reference to stopping the foreclosure proceedings against the properties and Defendant encouraged Plaintiff to employ him based on that relationship.

Dunlap prepared and filed the bankruptcy petition on behalf of WinCor on December 7, 1998 in the United States Bankruptcy Court for the Western District of Tennessee. In response to Dunlap's filing, InSouth Bank ("InSouth"), a creditor of WinCor, filed a Motion to Terminate Automatic Stay, or in the Alternative, for Adequate Protection. InSouth's motion was entered to protect or assert its foreclosure interests in WinCor's Shelby County and DeSoto County properties. The bankruptcy court held a hearing on this motion on February 18, 1999, at which time Dunlap disclosed to the court that Goodwin, without the prior consent of the court or Dunlap, signed a contract with Diamond Realty to list WinCor's Shelby County and DeSoto County properties. In his pleadings, Goodwin admits to signing a listing contract with a different realtor, but maintains that WinCor's hand was forced due to Dunlap's repeated failures to respond to phone inquiries from both plaintiff and WinCor.

The court noted concern with the "deteriorating" state of the proceedings, and directed the parties to take a brief recess to discuss the specifics of the property listing and sale. When the parties to the proceeding returned from recess, Dunlap inexplicably failed to accompany plaintiff and President back into the courtroom. In Dunlap's absence, InSouth's attorney advised the court as to the parties' agreement to allow WinCor 90 days "from the date of the entry of the order to close and pay [InSouth] off." Failure of WinCor to comply with this order would grant InSouth relief from the automatic stay thus allowing the bank to proceed to foreclosure. A Consent Order Granting Relief from Automatic Stay as to InSouth was entered on February 24, 1999.[3] Since this order was not made part of the record, we quote the relevant language from Dunlap's affidavit.

> [WinCor, Inc.] shall have (90) days from entry of this order within which to sell the property and complete a closing and pay off InSouth Bank.

---

[3] In a memorandum opposing Dunlap's Motion for Summary Judgment, Goodwin asserts that defendant's absence resulted in irreparable harm to plaintiff and WinCor.

> The Consent Order was proposed and drafted by InSouth Bank's attorney without any representation or consent by Plaintiffs. Plaintiffs were abandoned by Defendant Dunlap as Counsel for Plaintiffs in the Court room with a pending Motion from opposing Counsel without Representation by Defendant Dunlap. Consequently, the Consent Order was indeed drafted and submitted, worded in the benefit of InSouth Bank as it was prepared by their counsel. Plaintiffs contend this absence of Counsel caused irreparable harm to Plaintiffs. Plaintiffs were not afforded their opportunity to argue the motion or request additional time.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> That upon the failure to complete and pay off InSouth Bank on or before the expiration of (90) days, InSouth Bank shall be Granted Relief from the Automatic Stay to proceed with any and all action to recover possession including foreclosure, forcible entry and detainer of property.

On May 21, 1999, WinCor entered into a real estate purchase contract with Vince Authement ("Authement") for the sale of only the Shelby County property. Pursuant to the contract, Authement agreed to pay $200,000.00 to WinCor. In an addendum to the contract, Authement agreed to pay "$36,000.00 to Daniel Goodwin as the holder in due course of a second mortgage on the property for the same amount."

In his memorandum opposing Dunlap's Motion for Summary Judgment, filed August 31, 2001, Goodwin noted that he hand-delivered a copy of the purchase contract to Dunlap on May 21, 1999.[4] After reviewing the contract, Dunlap filed a Motion to Approve Sale of Real Estate and for Extension of Time in which to Sell Real Estate on June 16, 1999. On July 9, 1999, while the motion was still pending, InSouth proceeded with the foreclosure of WinCor's Shelby County and DeSoto County properties under the authority of the court's February 24, 1999 Order.

Goodwin initiated a legal malpractice suit against Dunlap on May 26, 2000, alleging negligence for Dunlap's "failure to perform and represent the basic needs to benefits his clients." Goodwin's allegations of negligence are premised on Dunlap's perceived "abandonment" of WinCor and plaintiff at the February 18, 1999 hearing before the Bankruptcy Court, and Dunlap's asserted failure to submit the real estate purchase contract to the court during the time period specified in the February 24, 1999 Order.

Dunlap filed his answer to Goodwin's complaint on August 18, 2001. In his answer, Dunlap asserted that Goodwin did not have standing, capacity, or "the authority or the permission of the Bankruptcy Court to take any action on behalf of Wincor, Inc." Additionally, Dunlap noted that he complied with the acceptable standard of practice for attorneys practicing law in Shelby County, Tennessee, in his representation of WinCor, and maintained that "[t]here was never an attorney-client relationship between the plaintiff Daniel P. Goodwin and the defendant John E. Dunlap."

---

[4] Goodwin filed the Affidavit of Chris Smith ("Smith") in support of plaintiff's argument that Dunlap personally received the real estate purchase contract on May 21, 1999. Smith, an employee of Goodwin's business, was present at the time of delivery. In his affidavit, Smith testified to the events of May 21, 1999.

> I rode with Mr. Goodwin to deliver the contract to attorney John Dunlap's office at 1433 Poplar Ave. and went inside the office building with Dan Goodwin while we waited for a woman that worked there to make copies of the contract.

On August 6, 2001, Dunlap filed a Motion for Summary Judgment in the Circuit Court of Shelby County, Tennessee. In support of this motion, Dunlap filed an affidavit stating his knowledge of the applicable standard of practice and the factual basis for defendant's conclusion that in behalf of his client, Wincor, he fully complied with this standard. Shortly thereafter, Goodwin submitted a memorandum opposing Dunlap's motion. Goodwin did not attach a countervailing affidavit from an expert refuting Dunlap's affidavit. Prior to the scheduled hearing, Goodwin filed a motion to have Dunlap's summary judgment motion held in abeyance pending the completion of the scheduled discovery depositions of attorneys Larry D. Austin ("Austin") and Sean Haynes ("Haynes").

A hearing on Dunlap's summary judgment motion was held on September 28, 2001. After careful consideration of Dunlap's motion, supporting affidavit, statement of undisputed facts, and the entire record, the trial court entered an order on October 2, 2001 granting summary judgment to Dunlap.[5] The court provided the following rationale for its decision.

> The Court finds that whether a lawyer complied with the recognized standard of acceptable practice applicable to lawyers in this jurisdiction is a question of expert opinion and is beyond the common knowledge of laymen, that the defendant Dunlap established by his affidavit that he possessed and exercised that degree of care, skill and diligence ordinarily possessed and exercised by lawyers practicing law in this jurisdiction and that he complied with that recognized standard, and that there was no countervailing affidavit of an expert to refute the defendant's affidavit.

> The court further finds that the defendant, Dunlap, as established by his Affidavit, was retained by Wincor, Inc. to file a bankruptcy petition for Wincor, Inc. and to represent Wincor, Inc. in connection with the bankruptcy case, and that the defendant was not retained to represent, and did not represent, the plaintiff Goodwin.... [The court finds] that the plaintiff as a beneficiary of The Goodwin Family Trust and a creditor of the debtor in bankruptcy, did not create an attorney-client relationship with the defendant Dunlap, as argued by the plaintiff Goodwin; and that the plaintiff Goodwin has no claim or cause of action for legal malpractice against the defendant.

---

[5] The trial court did not address or explain why Goodwin was not permitted additional time to secure the discovery depositions of attorneys Austin and Haynes.

On October 19, 2001, Goodwin filed the affidavit of Malenda Meacham.[6] Meacham testified to her opinion that it is a "gross deviation of the acceptable standard of practice" for a practicing attorney in the State of Tennessee to leave a client during a hearing or motion. Affiant further affirmed that Dunlap's alleged failure to deliver the real estate purchase contract to the court prior to expiration of the Order deadline constituted "more than mere palpable negligence, but Culpable conduct."

Goodwin filed a Motion to Rehear, Alter or Amend Summary Judgment or in the Alternative, Motion for New Trial, on October 17, 2001. In his motion, Goodwin pointed to numerous "disputed" issues of fact precluding summary judgment, and further asserted that Dunlap's "palpable" negligence should not require expert testimony. On November 2, 2001, Goodwin filed a Statement of Facts, followed by an amended version a mere seven days later. Dunlap filed a Motion to Strike Plaintiff's Statement of Facts on the basis that Goodwin's pleadings did not comply with Tennessee Rule of Civil Procedure 56.03. The trial court, in a hearing on November 16, 2001, denied Goodwin's motion, but never ruled upon Dunlap's motion to strike.

Goodwin appealed, presenting the following eight issues for review, as quoted from his brief:

> 1. Was it error when the Trial Court denied Plaintiff's "Motion of Plaintiffs for Ninety Day Stay?"
>
> 2. Was it error when the Trial Court denied Plaintiff's "Motion to Hold in Abeyance?"
>
> 3. Did the Trial Court err when the Court granted the Defendant's "Motion for Summary Judgment?"
>
> 4. Did the Trial Court err when it dismissed Plaintiff Goodwin's individual case based on T.R.C.P. 56?
>
> 5. Was the Trial Court in error when it dismissed Plaintiff's case without allowing Plaintiff to Amend his complaint?
>
> 6. Was it error by the Trial Court to Dismiss with prejudice, by granting an "Order for Summary Judgment" against WinCor, Inc. as WinCor, Inc. was not represented by counsel and no one had signed the complaint on behalf of WinCor, Inc.?

---

[6] Meacham's affidavit was filed seventeen days after the trial court's Order granting summary judgment to Dunlap. Consequently, the trial court did not address or consider this affidavit in its October 2, 2001 Order. Goodwin has provided no explanation or justification for his failure to submit or obtain Meacham's affidavit prior to the September 28, 2001 summary judgment hearing.

7. Did the Trial Court err when it denied Plaintiff's "Motion to Rehear, Alter or Amend Summary Judgment, or in the alternative, Motion for New Trial?"

8. Was it error for the court to grant Summary Judgment and dismiss Plaintiff's case based on the doctrine of Res Ipsa Loquitur?

We begin with an examination of Goodwin's first and second issues concerning motions for a 90-day stay and to hold the case in abeyance. On August 31, 2001, plaintiffs filed a "Motion of Plaintiffs for Ninety Day Stay" seeking additional time to hire an attorney. On September 21, 2001, seven days before Dunlap's summary judgment motion was scheduled for hearing, Goodwin filed a motion to hold defendant's motion in abeyance pending the completion of two discovery depositions. In support of one of his motions, Goodwin filed a Notice to Take Deposition of Larry D. Austin on October 17, 2001 and a notice to take the deposition of Sean M. Haynes on October 22, 2001.

Despite Goodwin's argument that the trial court denied his motions, there is no evidence in the record to indicate that the court entered such a ruling or even considered the motions at all. In fact, there is no evidence in the record to suggest that Goodwin complied with Local Rule 5(b) of the Circuit Court of Shelby County, which provides:

> All motions except those during the actual trial of the case shall be entered on the motion docket. Only those motions placed on the motion docket by the close of business on the preceding Friday shall be heard.

Because the record does not provide evidence of whether Goodwin's motions were entered on the docket, we cannot find that the court was in error for failing to grant or consider such motions. Dunlap asserts in his brief that Goodwin's motions were never set for hearing, an accusation that has never been refuted or addressed by plaintiff. We find no error on the part of the trial court concerning these motions.

As previously noted, WinCor is not appealing the trial court's grant of summary judgment to Dunlap. Accordingly, the determinative issue is whether the trial court erred in granting Dunlap summary judgment in Goodwin's action.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that

party, and discard all countervailing evidence. *Id*. In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth ***specific facts*** showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

Taking the strongest legitimate view of the evidence in favor of Goodwin, and allowing all reasonable inferences in favor of plaintiff, we find that Goodwin has failed to set forth specific facts showing an attorney-client relationship, sufficient to create a genuine issue of material fact. The record in the case at bar is replete with amended pleadings and supporting memoranda. Goodwin relies heavily on these pleadings as the factual basis for his argument that an attorney-client relationship was formed between the parties. The few evidentiary documents introduced by Goodwin constitute an unimpressive and unpersuasive attempt to manufacture an issue of fact regarding the existence of an attorney-client relationship.

The relationship between a client and an attorney is based on contract.

> In its most basic terms, this contract involves the exchange of competent legal services in return for an agreement to pay a reasonable fee. The attorney is obligated to exercise the utmost good faith in the discharge of his or her duties to represent the client.

***Starks v. Browning***, 20 S.W.3d 645, 650 (Tenn. Ct. App. 1999) (citations omitted).

"A contract has been defined over the years as an agreement, upon sufficient consideration, to do or not to do a particular thing." ***Smith v. Pickwick Electric Cooperative***, 212 Tenn. 62, 71-72, 367 S.W.2d 775, 780 (1963) (citing ***Furman, Green & Co. v. Nichol***, 43 Tenn. 432, 445 (1866)). A party attempting to prove the existence of a contract "is required to show that the agreement on which he relies was supported by adequate consideration..." ***Price v. Mercury Supply Co.***, 682

S.W.2d 924, 933 (Tenn. Ct. App. 1984). "[I]n all simple contracts ... whether written or verbal, the consideration must be averred and proved." *Clark v. Small*, 14 Tenn. (6 Yer.) 417, 418 (1834). *See also* 17 Am. Jur. 2d *Contracts* § 125 (1965); 17 C.J.S. *Contracts* § 116 (1963).

In Plaintiff's Argument Against Defendant's Order for Summary Judgment, Goodwin asserts that an "Attorney-Client relationship existed between Plaintiff and Defendant as evidenced by correspondence directed to Plaintiff from Defendant." Goodwin specifically cites to two letters filed as exhibits in this case. The first letter, dated November 16, 1999, was drafted by Dunlap to Goodwin. Dunlap's purpose for this letter was to instruct Goodwin as to the necessary steps that must be taken to complete the sale of WinCor's California property. Goodwin maintains that this letter is evidence of an attorney-client relationship because the letter was personally addressed to plaintiff, impliedly recognized Goodwin as a creditor, beneficiary, and involved party to whom Dunlap owed a known duty, and encouraged Goodwin to contact Dunlap directly if he had any questions or concerns regarding the sale of the California property.

Goodwin further contends that Dunlap's February 22, 1999 letter to Gene Goodwin, President of WinCor, is evidence that an attorney-client relationship existed between plaintiff and defendant, thereby creating a genuine issue of material fact. In this letter, drafted shortly after the February 1999 bankruptcy hearing, Dunlap scolds Gene Goodwin for failure to comply with Chapter 11 Bankruptcy procedure. Plaintiff Goodwin notes that he also received a copy of this letter, thereby signifying Dunlap's knowledge of plaintiff's personal involvement in this case. We are unpersuaded by Goodwin's argument that these letters are proof that Dunlap recognized the existence of an attorney-client relationship between he and plaintiff, and conclude that the letters of November 16, 1999 and February 22, 1999 relate solely to Dunlap's representation of Wincor in the Chapter 11 proceedings, and are not evidence of an individual attorney-client relationship with Goodwin.

Despite the opposing positions expressed by the parties in their affidavits, this evidence fails to create a genuine issue of material fact as to whether an attorney-client relationship existed between plaintiff and defendant. We take specific note of the shortcomings and omissions of the affidavit submitted by Goodwin, and the failure of this affidavit to present any evidence to suggest or prove the existence of an attorney-client relationship. After intense scrutiny of Goodwin's affidavit, we are unable to interpret any of the statements in this document as proof or evidence that an attorney-client relationship was formed between plaintiff and defendant. Although Goodwin affirms that he advanced money to the President for payment of Dunlap's fees in representing WinCor in the Chapter 11 proceedings, and contends that Dunlap was aware of plaintiff's involvement as a third party beneficiary and individual creditor, he fails to simply state that the parties entered into an attorney-client relationship separate and apart from Dunlap's representation of WinCor. Moreover, Goodwin's affidavit sets forth no specific facts regarding the terms of this relationship, nor does Goodwin make any reference to the time, place, conditions, or occurrence of the oral contract for representation allegedly entered into by the parties.

Further, although Goodwin asserts that Dunlap's retainer fee was paid by WinCor through funds advanced by Goodwin, there is absolutely no evidence in the record to suggest that these funds

were wholly or partially intended as payment for services rendered by Dunlap on Goodwin's personal interests. As additional support for our holding, we note that the time sheet filed by Dunlap supplementing his application for attorneys fees does not contain a single entry for time dedicated to the representation of Goodwin's personal interests in the WinCor property. In fact, Dunlap's time sheet contains only one entry pertaining to plaintiff Goodwin, a 0.5 hour entry for February 22, 1999. The February 22, 1999 entry likely accounts for time defendant spent authoring his letter to Daniel and Gene Goodwin scolding them for their violation of Chapter 11 Bankruptcy procedure.

Accordingly, the order of the trial court granting summary judgment to defendant is affirmed. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed to appellant, Daniel Goodwin, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.