JOHN M. JOHNSON and CHARLES EDWARD SHERRON,
Plaintiffs-in-Error,

*v.*

THE CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA,
NEBRASKA, Defendant-in-Error.

356 S.W.2d 277.

(*Jackson,* April Term, 1961.)

Opinion filed April 4, 1962.

ROBERT L. WHITE, Memphis, for plaintiffs in error.

OLEN C. BATCHELOR, JR., Memphis, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

The parties will be referred to as in the Trial Court. The action of the Trial Court, sitting without the intervention of a jury, in dismissing this case was affirmed by the Court of Appeals. We have granted certiorari.

The record discloses that John M. Johnson and Charles Edward Sherron sued The Central National Insurance Company of Omaha, Nebraska for a breach of contract and for cause of action stated:

That on September 30, 1959, the Insurance Company issued a policy of automobile liability insurance to the

plaintiff, John M. Johnson, insuring him and "any resident of his household against liability or loss for which the said John M. Johnson or any member of his household shall be legally obligated to pay as damages on account of bodily injury or property damage inflicted on any person or property as a result of the use of an automobile described in such policy and owned by plaintiff John M. Johnson." The term of the policy was for one year, and the full premium was paid by the plaintiff.

On the 5th day of February, 1960, Charles Edward Sherron, stepson of John M. Johnson and a member of his household, was driving the Lincoln sedan automobile described in said policy of insurance with the consent of John M. Johnson, and while said stepson was so driving said automobile he had an accident in Shelby County, Tennessee, which resulted in suits being filed against him and his stepfather. Upon the trials thereof judgments were rendered against the plaintiffs in the total amount of $2,082.00 including the Court costs, the recovery for which the plaintiffs sue the defendant, Insurance Company, together with damages in the amount of $500.00 paid by said plaintiffs for attorneys' fees in the proper defense of the claims for damages brought against them as aforesaid.

The defendant filed an answer admitting the issuance of the policy for the term alleged, upon the conditions alleged, and that the premium therefor had been paid in full. For special plea the defendant alleged that the policy of insurance was written as a 1-B classification, such classification prevailing when there are no drivers under the age of twenty-five years in a household. It was alleged that on November 11, 1959 it came to the

attention of the defendant that plaintiff, Charles Edward Sherron, was a resident of the household of plaintiff, John M. Johnson, and that he was under the age of twenty-five years and that a representative of the defendant called upon the said plaintiff, John M. Johnson, explained to him the position of the defendant and then obtained his signature to an endorsement which was made a part of the policy as follows:

## "EXCLUSION OF NAMED DRIVER ENDORSEMENT

"In consideration of the premium charged it is understood and agreed that there shall be no coverage under this policy while the automobile insured is driven by

Charles Sherron

"The terms and conditions of this endorsement are hereby accepted and agreed to by the named insured whose signature has been affixed hereto this 11 day of November 1959.

"John M. Johnson (signed)
"Named Insured.

"Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions, or agreements of the policy other than as above stated.

"To be attached to and form a part of policy No. FC 7543 issued to John M. Johnson by The Central Insurance Company of Omaha.

"J. Earl Thompson (signed)
President

"This endorsement effective
September 30, 1959.
"W. C. Raff (signed), Agent
A.A.C. Insurance Agency
CN-2318".

Upon the trial of the case in the Circuit Court it was stipulated and agreed between the parties that the judgments referred to in the declaration had been rendered against the plaintiffs and in addition thereto they had incurred liability to the extent of $500.00 for attorneys' fees in defending the suits resulting in said judgments. It was further stipulated:

"The only point in issue was a question of law and that being whether or not there was good and valid legally binding consideration to support the exclusion endorsement which restricted Charles Sherron from being covered under the insurance policy while driving the Lincoln automobile. It was further stipulated that the defendant forbore exercising its right of cancellation of the policy as a result of Johnson signing the exclusion endorsement and that had Johnson not signed the endorsement the right of cancellation on the part of the defendant would have been exercised."

The plaintiffs contend that the endorsement agreed to by John M. Johnson on November 11, 1959 is without consideration and, therefore, ineffectual and not binding on them. They also contend that the policy of insurance was a contract extending for a period of one year from September 30, 1959 for which the entire premium had been paid in advance and that the terms thereof could not be altered or changed except through another con-

tract executed for a valuable consideration. They contend that the words of the endorsement "In consideration of the premium charged" show that no consideration passed from the Insurance Company to the insured for his agreement to limit the coverage under the policy and, therefore, such agreement was unilateral and of benefit to the Insurance Company only. Or stated another way, it is contended that the defendant was obligated to carry out the terms of its contract of September 30, 1959, which had been freely entered into between the parties for a valuable consideration paid by the plaintiff, Johnson, and that no consideration or benefit passed to Johnson for the reduction or the limiting of the coverage as provided for in the endorsement.

It is the contention of the defendant that it had the right on ten days notice to the insured to cancel the policy and that it intended to cancel the policy and of course return the unearned premium unless the insured agreed to the endorsement being placed on the policy. In other words, the defendant says that its forbearance or its refraining from canceling the policy, as it had the right to do upon ten days' notice, was sufficient consideration passing to Johnson to support his act of signing the endorsement and, therefore, is a valid and enforceable agreement of modification of the policy. The accident out of which this suit grows did not occur until February 5, 1960, which was, of course, not within the period of time of ten days notice which the defendant could have given on November 11, 1959 of its intention to cancel the policy provided the endorsement was not agreed to by the plaintiff Johnson.

In considering this case we are cognizant of the daily practice of Insurance Companies operating in this State

of issuing various endorsements to insurance policies already in existence which change the terms and conditions of the policy as originally written so as to limit or restrict their liability as to person, firm or corporation or as to amount.

Counsel have been unable to find statutory or decisional law of this State to aid the Court in making its decision on the exact point in question. However, they have cited a number of decisions from other jurisdictions, some of which hold that an endorsement, such as the one involved in this case, is invalid for lack of consideration and others hold that such a modification freely entered into and consented to by both parties is a binding obligation and, therefore, valid.

There is a general statement in 44 C.J.S., at page 1120 under the general subject of "Insurance" to the effect that:

> "A policy or contract of insurance may be changed or modified by a new and distinct agreement subsequently entered into by the parties or their authorized agents.
>
>         &ast;      &ast;      &ast;      &ast;      &ast;      &ast;
>
> "Whether the parties have actually altered or modified a particular policy or contract of insurance is a question of fact. In order that there may be a modification, there must be an agreement therefor, supported by a consideration, and neither party has a right to modify the contract without the consent of the other party."

There are reported decisions in Alabama, California, Georgia, Michigan, Texas and West Virginia holding

that under facts similar to those in the case under consideration that modification was effective and valid. There are other cases in Alabama, California and Texas holding that the particular facts in the cases there under consideration were insufficient to constitute modification of existing policies of insurance.

Some of the decisions on this question are referred to in the annotation in 52 A.L.R.2d at pages 826, 827, in which it is said:

"The small number of cases touching upon this issue are agreed on the first aspect of the question: it is uniformly held, at least in the absence of facts showing an estoppel, that consideration is necessary for the valid modification of the coverage provisions of an insurance policy, whether the effect of the modification is to extend or limit the risks against which the insurance affords protection."

In the case of *Federal Life & Casualty Company v. Robinson*, 28 Ala.App. 1, 178 So. 549, the insured had been issued a policy of health insurance, the coverage of which included hernia. The policy gave the insurer the right to cancel at any time by giving written notice together with a return of the unearned premium. The insured suffered a hernia and was paid the amount due under the policy. Thereupon the Insurance Company not willing to continue to carry the risk for hernia made known its purpose to exercise its option to cancel unless the insured executed an agreement, to become a part of the policy, striking out the hernia coverage. The insured agreed to the modification of the policy. Thereafter he suffered another hernia and brought suit to recover benefits contending that the exclusionary agreement be-

tween the parties was invalid because of lack of consideration. The Court held that the agreement between the parties was a complete defense to the claim either as a part of the contract or as an estoppel to claim the benefits under the policy after having contracted not to do so, upon a valuable consideration given the company and received by the insured.

In the case of *Massachusetts Bonding & Insurance Company v. Florence,* decided by the Texas Civ.App. Court, 216 S.W. 471, the insured executed an instrument releasing the insurer from liability for disability due wholly or in part to hernia or rupture. The insured having suffered, following the execution of the release, disability from hernia, he sought recovery on the policy, and the defense was the execution of the release. The Court upheld the defense stating that a valuable consideration was furnished for the execution of the release by the wavier of the insurer of its legal right to cancel the policy upon notice. The general agent of the company testified he would not have permitted the health policy to remain in force unless the insured had given the release.

Opposed to the above decision is the ruling of the Missouri Court in the case of *Rice v. Provident Life & Accident Insurance Company,* 231 Mo.App. 560, 102 S.W. 2d 147. The policy involved in that case was a health and accident policy insuring against, inter alia, disability from rheumatism. The policy also provided for cancelation by written notice and return of unearned premium. The insured suffered an attack of arthritis and payment was made of his claim. The insured then executed an endorsement to the policy stating that no liability should

attach to the insurer should there be further disability or loss on the part of the insured caused directly or indirectly, wholly or in part, by rheumatism, arthritis, or related diseases. Thereafter the insured suffered an attack of sciatic rheumatism and by way of defense to his action to recover under the policy the insurer pointed to the endorsement which the insured had executed. The Court rejected said defense and said that the failure of the Insurance Company to cancel the policy, as it had the right to do, was not sufficient consideration for the execution of the endorsement. The Court saying that the insurer had the same right to cancel the policy immediately after the execution of the endorsement as it had before, with the result that there was no detriment to the insurer in agreeing to the endorsement; nor was the insured benefited in any way by the endorsement, since he was not relieved of any danger of the immediate cancellation of his policy by reason of the fact that the endorsement was executed and purported to be attached to the policy.

The writer of the annotation in 52 A.L.R.2d, supra, has this to say about this case:

"The decision in the Rice Case is open to criticism on the ground of excessive formalism embodied in the view stated by the court, which, although acknowledging that the insurer could have canceled the original policy and not denying that after such a cancellation the parties could have entered into a contract identical in terms with the modified contract, held that the same result could not be reached by means of a modification of the original policy."

34

It seems that the Rice case holds that the parties are not permitted to do directly that which they are permitted to do indirectly.

The record in the case before us shows that the rate classification did not take into consideration that persons under the age of twenty-five years would be permitted to drive the Lincoln automobile, and when this fact was brought to the attention of the Insurance Company the agent called upon the insured and asked him to sign the exclusion endorsement which he did freely and voluntarily. The stipulation is that had the insured not signed the endorsement, the right of cancellation on the part of the defendant, Insurance Company, would have been exercised.

Therefore, the real question before us for decision on the facts in this case is whether or not there was a valuable consideration passing to Johnson for the execution of the endorsement and whether Johnson by his conduct in signing and agreeing to the same is now estopped to assert to the contrary.

■ It has been held that the Court may look behind the recitals of written instruments to determine the actual consideration therefor in a number of reported decisions. Therefore, we look to the facts to determine whether or not the forbearance to cancel the policy is sufficient consideration to support the agreement between the parties.

"A contract is an agreement, upon sufficient consideration, to do or not to do a particular thing." *Furman v. Nichol,* 43 Tenn. 432, 433, 445.

■ While a contract may be either expressed or implied, or written or oral, it must result from a meeting

of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced. *American Lead Pencil Company v. Nashville, Chattanooga & St. Louis Ry Co.,* 124 Tenn. 57, 134 S.W. 613, 32 L.R.A.,N.S., 323.

██ A valuable consideration is either a benefit to the party promising or a prejudice or trouble to the party to whom the promise is made. *Macon v. Sheppard,* 21 Tenn. 335.

In the case of *Palmer v. Dehn,* 29 Tenn. App. 597, 198 S.W.2d 827, a skilled mechanic and traveling representative contacted Palmer who had formerly purchased a motor bus from the company represented by Dehn. Palmer informed Dehn that he was having mechanical trouble with a bus sold to him by Dehn and the two of them went to the place where the bus was parked and diagnosed the trouble. While Dehn was attempting to show Palmer how tight a belt should be, the driver started the motor, cutting off two of Dehn's fingers. On the way to the hospital Palmer told Dehn "I am awful sorry this happened, but don't worry a minute. I will see you are compensated for the loss of your finger, take care of your expenses for the loss of your finger, and all." This assurance was later reiterated. In one count of the declaration in the suit brought lated by Dehn against Mr. Palmer this contract was alleged by the plaintiff. The defendant denied with great vigor that there was any consideration for such a contract. In disposing of this matter the Court said:

"For there to be a consideration in a contract between parties to the contract it is not necessary that

something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration. * * * In the instant case the jury was justified in inferring the promisee accepted this promise if it were performed within a reasonable time; that in foregoing his right of action for a reasonable time was a good consideration moving to the promisor; they were clearly justified in inferring that the basis of the promise of the promisor was for forbearance in bringing suit. By forbearing he might have readily borne a detriment. The promisor might easily have gained a benefit by such a forbearance. See 12 Am.Jur., Sec. 85, page 580." (Page 600, 198 S.W.2d page 828)

In the case of *Beasley v. Gregory,* 2 Tenn.App. 378, 382, it was held:

" 'An agreement to forbear for a time, proceedings at law or in equity, to enforce a well-founded claim, is a valid consideration for a promise. * * Nor need the agreement to a delay be for a time certain, for it may be a reasonable time only, and yet be a sufficient consideration for a promise.' "

This statement in the *Beasley v. Gregory* case, supra, was taken from the case of *Cathcart v. Thomas,* 67 Tenn. 172, 174. The same statement was approved again in the case of *DeBord et al. v. Brown,* 188 Tenn. 160, 164, 217 S.W.2d 772, 773. In that case Mrs. Brown testified that immediately after the collision of her car with that of another while her car was being driven by the employee of a service station where she had left it for repair, that the owner of the said service station told her that "her

'car would be taken care of; that he would see to paying the bills'." The Court said:

"In the present case the promise relied on was based upon an agreement to forbear enforcing the rights of the promisee against Campbell or his automobile, coupled with the understanding that the promisor DeBord would proceed at once to subject the Campbell car to the payment of damages sustained by the DeBord truck."

In the case of *Kentucky Farm Bureau Mutual Insurance Company v. McMullin,* Ky., 280 S.W.2d 882, it was held:

"Parties to automobile liability and collision policy had the right to make such lawful modifications of its terms as they might mutually agree upon."

This seems to be the general law, and to the same effect is the case of *Silberstein v. Massachusetts Mutual Life Insurance Company,* 189 Md. 182, 55 A.2d 334, in which it was held:—"The parties to an insurance contract (a life insurance contract) may make such lawful modifications thereof as they may mutually agree upon."

The facts in this case support the conclusion that the parties did mutually, freely and voluntarily and for a valuable consideration agree upon a modification of the policy of insurance in question. The consideration passing to Johnson for his written agreement to the endorsement was that the Insurance Company then and there at the time the endorsement was executed forbore or gave up its right to cancel the policy. In so doing the Company acted upon the good faith of Johnson in agreeing to and signing the endorsement. The Company says

that but for the endorsement the policy would have been cancelled as it had a right to do under the terms of the policy.

It is insisted by the Company that Johnson by his free and voluntary act in agreeing to the endorsement is now estopped to deny to the contrary. We do not find it necessary to base our opinion upon estoppel in view of our holding that this endorsement is supported by a valid consideration.

Therefore, all of the assignments of error are overruled and the judgment of the Court of Appeals is affirmed at the cost of the plaintiffs.