IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 7, 2001 Session

## LINDA O'MARY v. PROTECH BUILDERS, INC.

**Appeal from the Circuit Court for Knox County**
**No. 1-19-99      Dale C. Workman, Judge**

**FILED MAY 12, 2001**

**No. E2000-02539-COA-R3-CV**

The plaintiff, Linda O'Mary, brought this action against the defendant, Protech Builders, Inc., seeking damages for the defendant's alleged faulty construction of an addition to the plaintiff's home. Before trial, the parties entered into a settlement agreement, under the terms of which the defendant agreed to perform certain repairs, including "replac[ing]" any wood in the back wall of the addition showing signs of water damage, and to pay the plaintiff $2,000 in attorney's fees. When the defendant refused to remove several water-damaged studs from the back wall, the plaintiff filed a motion seeking, *inter alia*, to set the case for a full trial on the merits. The trial court found that the plaintiff was unreasonable in demanding that the water-damaged studs be removed. The court below concluded that the defendant's efforts to perform the repairs, along with its payment of $2,000 to the plaintiff, operated as an accord and satisfaction. The trial court denied the plaintiff's motion and dismissed her complaint. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Dan Kidd, Knoxville, Tennessee, for the appellant, Linda O'Mary.

Roger D. Hyman, Powell, Tennessee, for the appellee, Protech Builders, Inc.

**OPINION**

I.

On July 27, 1996, the plaintiff hired the defendant to construct an addition to her home consisting of a kitchen/dining area and a laundry room. The contract price was $17,420, and the defendant was paid in full. The contract included a two-year warranty on workmanship and labor.

The plaintiff experienced several problems with the addition, including a constant leak under the kitchen sink, repeated discoloration of the linoleum, water spots on one window, and sagging outdoor electrical wires. The plaintiff came to believe that the defendant had improperly installed the roof on the addition, which in turn allowed rainwater to seep between the exterior and interior walls.

In November, 1998, the plaintiff filed suit in Knox County General Sessions Court seeking damages for breach of contract, breach of warranty, and violations of the Tennessee Consumer Protection Act. On December 3, 1998, the plaintiff's counsel sent a letter to the defendant's counsel proposing a settlement and setting forth specifically the repair work the plaintiff wanted the defendant to perform. The defendant refused the plaintiff's settlement offer, and the case proceeded to trial in General Sessions Court. The plaintiff was awarded $9,600.

The defendant appealed to the Circuit Court, and the case was set for trial in that court. The day before trial, the defendant accepted the plaintiff's proposed settlement agreement.[1] On the day of trial, counsel for the parties advised the trial court that an agreement had been reached, and the terms of the agreement were announced in open court. Under the agreement, the defendant agreed to perform various repairs to the addition and pay the plaintiff $2,000 for her attorney's fees within thirty days. Most notably for the purposes of this opinion, the defendant agreed to "[r]emove the siding on the back side of the kitchen addition and inspect for water damage and *replace* any wood which shows signs of damage, then re-install the siding." (Emphasis added). Counsel for the parties indicated to the trial court that upon completion of all of the repairs and the payment of the $2,000, the parties would enter an agreed order dismissing the plaintiff's complaint. The delay in the entry of the order was apparently agreeable to the trial court.

Approximately ten days after the hearing, the defendant's subcontractor, Bobby Wilson, arrived at the plaintiff's house to perform the work prescribed by the parties' agreement. Wilson began by removing the siding and exterior plywood sheeting from the back wall of the addition. Upon removing the plywood, Wilson observed that the bottom plate and some of the studs were rotten as a result of water damage. He later testified that the water damage was more extensive than he expected. Wilson indicated to the plaintiff that he intended to remove the rotten bottom plate and insert a new one. As for the water-damaged studs, Wilson indicated that he did not intend to remove the rotten ones; rather, he intended only to insert new studs next to them. The plaintiff insisted that the parties' agreement required Wilson to remove the rotten studs. When he refused to do so, the plaintiff advised that she needed to contact her attorney. Wilson agreed to come back the next day. When Wilson arrived the next day, he found a note left by the plaintiff asking him not to start work until she arrived. The plaintiff testified that when she arrived, Wilson "was putting the insulation back up on the house and said he had quit." Wilson admitted that he began to replace the insulation on the back wall before the plaintiff arrived but stated that he did so only to protect the interior walls from rain. He testified that upon her arrival, the plaintiff told him "that they [were] going to go back

---

[1]The defendant accepted the terms set forth in the plaintiff's December 3, 1998, letter with only minor modifications, none of which are pertinent here.

to Court or she was going to call her lawyer to work this out or something of that nature." He denied telling the plaintiff that he "had quit," although he testified that "I might have said I'm getting fed up with it or – you know, it's kind of a conflict, and I don't really want to be in the middle of it."

Following this incident, the plaintiff filed a motion seeking, *inter alia*[2], to set aside the settlement agreement and reinstate the case on the court's docket for a full trial on the merits. The defendant filed a motion for accord and satisfaction, alleging that the defendant had attempted to perform the repair work but that the plaintiff had refused to allow the defendant access to the premises.

The trial court entered an order denying both motions. It directed the parties to prepare an order evidencing the terms of their settlement agreement previously announced in open court. Thereafter, the parties submitted an agreed order setting forth the details of the settlement agreement.

Following the entry of the agreed order, the plaintiff filed another motion seeking relief on the basis that the defendant had failed to comply with the parties' agreement. In turn, the defendant filed another motion for accord and satisfaction. In this motion, the defendant alleged that it had attempted to perform the repair work and had tendered a check for $2,000 to the plaintiff, which payment was accepted by the plaintiff.

A hearing was held on this second round of motions on August 31, 2000. Upon conclusion of the proof, the trial court announced its findings. It found that there had been an accord and satisfaction of the original claim. In so holding, the trial court noted that (1) the defendant had paid, and the plaintiff had accepted, the $2,000 for attorney's fees as provided by the agreement and (2) that the plaintiff was "unreasonable in expecting [the defendant] to go in and replace the whole wall on the end of her house by having to take out every stud – the studs there; the wallboard wouldn't have anything to support it, but that's unreasonable as to what was meant by replace the water damaged wood, to take out an entire wall of her house." The trial court concluded that by demanding that the water-damaged studs be removed, the plaintiff made the first substantial breach of the parties' agreement. On this basis, it dismissed the plaintiff's complaint.

II.

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R. App. P. 13(d); **Wright v. City of Knoxville,** 898 S.W.2d 177, 181 (Tenn. 1995). We must honor this presumption unless we find that the evidence preponderates against those findings. **Union Carbide Corp. v. Huddleston,** 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not accorded the same deference. **Campbell v. Florida Steel Corp.,** 919 S.W.2d 26, 35 (Tenn. 1996).

---

[2]In the alternative, the plaintiff requested, pursuant to Tenn. R. Civ. P. 70, that the trial court permit a third party to perform the required repairs at the defendant's expense.

III.

The trial court reasoned that the plaintiff was acting unreasonably and was the first party to materially breach the settlement agreement because the plaintiff maintained that the settlement agreement required the defendant to remove the water-damaged studs from the wall. Underpinning the trial court's ruling is the implicit finding that the term "replace" as used in the parties' settlement agreement required only the placement of new studs in the exterior wall and did not obligate the defendant to actually remove the water-damaged studs. On appeal, the plaintiff argues, *inter alia*, that the parties did not have a meeting of the minds as to the meaning of the term "replace" as used in the settlement agreement; thus, so the argument goes, the settlement agreement is not enforceable and the case should be remanded for a full trial on the merits.

The interpretation of an agreement of compromise and settlement, being merely a contract between parties to litigation, is governed by the law of contracts. **Environmental Abatement, Inc. v. Astrum R. E. Corp.,** 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000), *perm. app. denied* September 11, 2000. Interpretation of a written contract is a question of law. **Realty Shop, Inc. v. RR Westminster Holding, Inc.,** 7 S.W.3d 581, 597 (Tenn. Ct. App. 1999), *perm. app. denied* October 25, 1999. The primary goal in contract interpretation is to ascertain and give effect to the intent of the parties. **Guiliano v. Cleo, Inc.,** 995 S.W.2d 88, 95 (Tenn. 1999). In construing a contract, the words expressing the intent of the parties should be given their usual, natural, and ordinary meaning. **Id.** Absent fraud or mistake, courts should construe contracts as written. **Realty Shop,** 7 S.W.3d at 597.

An ambiguity arises in a contract when the contract language can be fairly understood in more ways than one. **Warren v. Metropolitan Gov't of Nashville and Davidson County,** 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997). "When a contract term is ambiguous there was no meeting of the minds." **Inscoe v. Kemper,** C/A No. M1999-00741-COA-R3-CV, 2000 WL 1657844, at *3 (Tenn. Ct. App. W.S., filed November 6, 2000). Without a meeting of the minds, a contract cannot be valid. "While a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." **Higgins v. Oil, Chemical and Atomic Workers Int'l Union, Local # 3-677,** 811 S.W.2d 875, 879 (Tenn. 1991) (quoting **Johnson v. Central Nat'l Ins. Co.,** 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (1962)).

The settlement agreement provides that the defendant will "replace any wood" in the back wall of the addition showing signs of water damage. At the hearing below, the plaintiff testified that she interpreted this provision to mean that the water-damaged studs would be removed and new studs would be inserted in their place. In support of her interpretation, she presented the expert testimony of Paul Hazelwood, an insurance company consultant and former licensed contractor, who testified that building codes require the removal of decayed material before the installation of new

wood. He further opined that the placement of new wood next to existing decayed wood would only cause further deterioration.

The defendant, on the other hand, presented evidence tending to establish that "replace" as used in the parties' agreement meant that the defendant was obligated only to place new studs in the wall to serve as a support structure, thus "replacing" the damaged studs in the support of the wall. The defendant's subcontractor, Bobby Wilson, bolstered this theory by testifying that the placement of new studs without removal of the old, damaged ones was an acceptable and common practice and would adequately repair the structure.

It is clear from this conflicting evidence that the parties did not share the same understanding of the meaning of the term "replace" at the time the settlement agreement was executed. Upon reviewing the evidence, we find that the term could reasonably be interpreted either way: it could mean that all of the water-damaged wood would be removed, or it could mean only that new wood would be inserted to supplant the water-damaged wood in supporting the structure. Either interpretation is reasonable; accordingly, we hold that the term "replace" as used in this settlement agreement is ambiguous. Thus, we find that there was no meeting of the minds as to this essential contract term. Without mutual assent, the settlement agreement is not valid and cannot be enforced. The trial court's dismissal of the plaintiff's complaint was thus in error.

Because there is no enforceable settlement agreement, it follows that this case must be remanded for a trial on the merits. Before this case may be tried, however, the plaintiff must return the $2,000 payment to the defendant.[3] Because we find that the settlement agreement is not enforceable, the other issues raised by the plaintiff concerning the plaintiff's entitlement to Tenn. R. Civ. P. 70 relief and the trial court's failure to find the defendant in contempt for allegedly failing to comply with the settlement agreement are pretermitted.

IV.

The judgment of the trial court is reversed. This case is remanded for further proceedings, consistent with this opinion, contingent on the plaintiff returning the $2,000 payment to the defendant within 15 days of the issuance of the mandate in this case. Costs on appeal are taxed to the appellee, Protech Builders, Inc.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[3]Counsel for the plaintiff indicated at oral argument that the plaintiff is willing to do so.