# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 8, 2003 Session

**JANET RYAN HILMAN V. RANDOLPH HILMAN**

**Appeal from the Circuit Court for Davidson County**
**No. 86D-2102   Muriel Robinson, Judge**

_____

**No. M2002-00898-COA-R3-CV - Filed July 31, 2003**

_____

This appeal arises from the trial court's denial of a contempt petition brought to enforce the provision in a marital dissolution agreement regarding the father's obligation to pay one-half of child's uncovered medical expenses. The trial court found the petitioning mother failed to present sufficient evidence of which expenses were medical and covered by the marital dissolution agreement and the petitioning mother acted unilaterally in incurring these extraordinary charges for treatment of the minor child. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

DON R. ASH, SJ, delivered the opinion of the court, in which BEN H. CANTRELL, PJ, MS, and PATRICIA J. COTTRELL, J, joined.

James Harris, III, Nashville, Tennessee, for the appellant, Janet Ryan Hilman.

Matthew F. Mayo, Nashville, Tennessee, for the appellee, Randolph Hilman.

## OPINION

### Background

Ms. Janet Ryan and Randolph Hilman divorced January 16, 1987 on the grounds of irreconcilable differences. The final divorce decree incorporated the parties' marital dissolution agreement ["MDA"] granting Ms. Ryan custody of their minor son. Mr. Hilman agreed to pay child support as well as "one-half (1/2) of any and all uncovered medical expenses including hospital, doctor, dental, psychological or psychiatric, orthodontic and optometry expenses."

1

At the time of their divorce, the Hilman's son was two years old. At age seven, he was diagnosed as suffering from Attention Deficit Hyperactivity Disorder. Other behavioral disorders were later discovered. Over a period of years, the son's treatment required him to see psychologists, psychiatrists, and other doctors as well as taking several medications. After the divorce, Mr. Hilman did little to remain involved in his son's life or decisions regarding medical treatment for the young man.

Sadly, the behavioral problems continued and the son's psychiatrists and doctors searched for alternative treatments to expensive inpatient hospitalization. The mental health professionals recommended a therapeutic wilderness program called Second Nature in Utah. The son attended this wilderness program throughout the summer of 1998. Ms. Hilman applied for payment by her insurance carrier for this program, but she was denied. Regardless, the son went to Utah and stayed in the program. Later, the son participated in two other intensive therapeutic residence programs, Positive Impact and Three Springs. Second Nature, Positive Impact and Three Springs cost several thousand dollars each and coverage was denied by the insurance carrier for these programs. Ms. Ryan never consulted Mr. Hilman prior to their son attending these therapeutic programs but did send regular medical bills and statements listing charges incurred at the various programs to him. Ms. Ryan is claiming uncovered medical care totaling $47,437.40 of which Mr. Hilman would owe half or $23,718.70.

In December 1999, Mr. Hilman questioned the charges for the therapeutic programs and refused to pay his portion. On November 14, 2001, Ms. Ryan filed a petition for contempt against Mr. Hilman for failure to pay one-half of the uncovered

2

medical expenses. The contempt petition was heard March 14, 2002. The court dismissed the petition.

Ms. Ryan raised two issues in her appeal:

1. Whether the trial court erred by finding Mr. Hilman not liable under the MDA for expenses unilaterally incurred by Ms. Ryan.

2. Whether the court erred by requiring Ms. Ryan to present specific evidence regarding exact charges for medical treatment at the therapeutic psychiatric programs.

**Discussion**

We review the lower court's factual determinations *de novo* with a presumption of correctness and will not reverse those findings of fact unless they are contrary to the preponderance of the evidence. *Randolph v. Randolph*, 937 S.W.2d 817, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). Regarding the lower court's legal conclusions, our review is *de novo* with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001); Tenn. R. App. P. 13(d).

### I. Was Mr. Hilman liable under the Marital Dissolution Agreement for expenses unilaterally incurred by Ms. Ryan

First, we view this issue as one of contract interpretation. A husband and wife divorcing on grounds of irreconcilable differences must enter into a marital dissolution agreement deciding a variety of issues including property division, parenting responsibilities, spousal support and child support. A divorce decree is to be construed like other written instruments. *Branch v. Branch,* 249 S.W.2d 581 (Tenn. Ct. App.1952). A decree must be constructed in light of the pleadings, particularly the prayer of the bill and the apparent purposes in the mouth of the draftsman and the court. *Livingston v. Livingston*, 429 SW2d 452, 456 (Tenn. Ct. App. 1967)

Ms. Ryan argues the court erred by requiring her to seek approval from Mr. Hilman or the court before enforcing the MDA as incorporated into the final divorce decree. Essentially, Ms. Ryan disputes the court's finding she acted unilaterally in incurring these expenses without consulting either Mr. Hilman or the court. In ruling from the bench, the lower court stated

[T]here was no joint decision on Three Springs. Ms. Ryan cannot unilaterally contract to a program of this magnitude without the consent of the other party, especially when it costs $4,200 a month, unilaterally, and then claim plane tickets, counselors fees, and things of that nature, which he has objected to, which this court feels he is justified in. You cannot do that and add it up and expect him to pay one half, under the proof that she brings before the court. She made that decision by herself. If she had come into court there is a way to do that, to show this child has an extra ordinary expense here, and that you need a contribution. You can't just go and sign up and spend this money and then by the way, at a later time, send somebody a bill for $18,000. You cannot do that.

The cardinal rule for contract interpretation is to ascertain the parties' intentions from the contract as a whole and to give effect to that intention consistent with legal principals. *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985). To arrive at that intent, it is appropriate to consider the circumstances of the parties at the time the contract was formed. *Hamblen County v. City of Morristown*, 656 S.W.2d 331 (Tenn. 1983). When the Hilman's entered into the MDA, their son was only two years old. He had not yet displayed symptoms of his severe psychological problems.[1] Their son was first diagnosed as ADHD when he was seven. Neither party disputes their lack of contemplation of their son's development of severe behavioral and emotional problems.

It is also well established in this jurisdiction an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be

---

[1] The court clearly expressed its finding in this regard stating, "[t]he problem is this child has got a serious mental illness. There's no doubt about it. The problem is it wasn't diagnosed at the time that these parties were divorced…there must have been a need for it at that time."

4

enforced. *Johnson v. Central National Ins. Co. of Omaha, Neb.*, 356 S.W.2d 277, 281 (Tenn. 1961). The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party. *Batson v. Pleasant View Utility District*, 592 S.W.2d 578, 582 (Tenn. Ct. App. 1979); *Balderacchi v. Ruth*, 256 S.W.2d 390, (Tenn. Ct. App. 1953). At the time these parties entered into the MDA, there was no meeting of the minds in regard to such extraordinary expenses.

Ms. Ryan's argument the MDA granted her the authority to unilaterally bind Mr. Hilman fails because under Tennessee law, every contract contains an implied duty of good faith and fair dealing in the performance and enforcement of the contract. *See Wallace v. National Bank of Commerce of Chattanooga, Inc.*, 938 S.W.2d 684, 686 (Tenn. 1996); *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995). In *Woods v.* Woods, 2000 Tenn. App. LEXIS 584, Judge David Farmer writing for the Western Section of the Court of Appeals stated:

> [W] hen considering whether the parties have complied with this duty of good faith and fair dealing, the court must ascertain the intention of the parties as determined by a reasonable and fair construction of the language of the contract.

We view Ms. Ryan's actions regarding these expenses in breach of her implied duty of good faith and fair dealing.

She did not have the right to unilaterally bind Mr. Hilman under well-settled contract law principals. If they could not come to an agreement, Ms. Hilman should have sought the court's instruction on resolving the disagreement. Regardless of Mr. Hilman's lack of involvement in his son's life, he deserved notice and the opportunity for input or court involvement in these unanticipated treatment decisions if he was obligated to pay

5

half of the cost. When these costs arose, Ms. Ryan should have discussed the various recommended treatment options with Mr. Hilman.

She interpreted the MDA as granting her plenary authority to decide how to care for her son. Understandably, Ms. Ryan sought the best healthcare for her troubled son. Her judgment reflects a caring parent who wants the best care available, regardless of the cost. The MDA does not grant her such unbridled authority.

## II. Was Ms. Ryan required to present specific evidence regarding exact charges for medical treatment.

Finally, Ms. Ryan argues the lower court misinterpreted the MDA. The lower court narrowly interpreted "medical expenses" in the MDA to mean treatment sessions by a psychiatrist or psychologist. Ms. Ryan argues this interpretation was the court's *sua sponte* substitution of "its own medical judgment for that of the physicians, psychiatrists, and psychologists." Mr. Hilman argues the therapeutic programs were "extraordinary" in nature and not medical expenses as contemplated in the parties MDA. Based upon testimony presented at trial, we do not disagree with the lower court's determination.

Ms. Ryan also argues the disputed therapy programs were covered medical expenses because they were "prescribed and/or recommended" by doctors, psychiatrists and psychologists. While the record is not entirely clear, there is ample proof the alternative programs at issue were presented to Ms. Ryan as one of various treatment options. Importantly, none appears to have been specifically ordered by any of their son's treating physicians. Dr. Bermudas said in his deposition he did not "prescribe" any specific program "in the traditional sense of the word." He recommended a "mental health intervention" as an alternative to a number of potential treatment options. Dr. Bermudas said regarding differentiation between "prescribing" and "recommending"

6

treatment options, he envisioned his role as one of guiding the patient through the decision making process rather than ordering a specific program or a specific treatment plan.

This point is important because Ms. Ryan broadly interpreted the scope of what expenses were covered by the term "medical expenses" in the MDA. Ms. Ryan included airfare to the treatment programs and the charges of an "educational consultant" who selected the programs. Additionally, she included the entire cost of the therapeutic program itself whether part of the program was educational in nature or strictly therapeutic. The record is clear Ms. Ryan merely tallied up the total expenses due and divided them by two. We view Ms. Ryan's interpretation of the MDA is untenable and affirm the lower court.

## Conclusion

For the reasons set out above, the order denying Appellant's Petition for Contempt is AFFIRMED. Costs of the appeal are assessed to Appellant.

_____
DON R. ASH, Sp. J.