IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2005 Session

## CHARLES SAMUEL BENNECKER, ET AL. v. HOWARD FICKEISSEN, ET AL.

Appeal from the Chancery Court for Jefferson County
No. 02-234     Telford E. Forgety, Jr., Chancellor

No. E2004-02129-COA-R3-CV - FILED NOVEMBER 10, 2005

This appeal involves the enforceability of the parties' oral settlement agreement.  The parties, who were next-door neighbors, were involved in a lawsuit over their common boundary line. The parties appeared for depositions, but before depositions commenced, they allegedly reached a settlement and cancelled the depositions.  A dispute later arose as to whether there had been a settlement of all issues in the case; the Defendants filed a motion seeking to enforce the settlement agreement.  The Plaintiffs responded that there was no enforceable contract because there had been an agreement as to some, but not all, of the issues in the case.  The trial court determined that there had been a settlement agreement as to all issues and ordered enforcement of the agreement. After careful review of the record, we hold that the evidence does not preponderate against the trial court's determination that the parties had an enforceable agreement to settle all claims.  We therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Charles T. Webber, Knoxville, Tennessee, for the Appellants, Charles Samuel Bennecker and Robbie Bennecker.

Gregory F. Coleman and Adam A. Edwards, Knoxville, for the Appellees, Howard Fickeissen and Margaret Fickeissen.

**OPINION**

## I. Factual and Procedural Background

On December 20, 2002, Charles Samuel Bennecker and his wife, Robbie Bennecker, filed a complaint in Jefferson County Chancery Court against Howard and Margaret Fickeissen, the Benneckers' next-door neighbors. They alleged that the Fickeissens had moved survey markers, created a nuisance by burning very close to plaintiffs' home, littered and/or vandalized plaintiffs' property, and cut down mature trees on the Plaintiffs' property. The Benneckers requested an order decreeing that their boundary line was the line set forth in their deed and restraining the Fickeissens from coming onto the Benneckers' property, from causing harm to anything on their property, and from causing any object of any kind to be placed, launched, or thrown onto their property. The complaint further sought monetary damages for the alleged injuries to the Benneckers' property.

The Fickeissens answered, denying the allegations of the complaint, but admitting that Mr. Fickeissen accidentally caused damage to a tree on the Benneckers' property. The Fickeissens also sought an order restraining the Benneckers from going onto the Fickeissens' property.

Depositions of the parties were scheduled for December 1, 2003 at the office of the Benneckers' counsel. That day, before the depositions started, the parties began to negotiate a settlement of the case. According to then-counsel for both the Fickeissens and the Benneckers, the parties reached an oral agreement to settle all of the issues and claims in the case.[1] Discovery depositions scheduled for that day were cancelled after the negotiation concluded.

On February 13, 2004, the Fickeissens filed a motion to enforce the settlement agreement. The motion alleged that the Benneckers agreed to accept the Fickeissens' offer of $2,700 plus court costs to settle and compromise all of their claims. The motion further stated that as part of the settlement, both parties agreed to the issuance of a permanent injunction barring each party from entering onto the other's property.

In response, the Benneckers argued against enforcement of the alleged agreement. They admitted accepting the Fickeissens' offer of $2,700 for damage to the tree, but alleged that they did not agree to the issuance of a permanent mutual injunction barring each party from entering onto the other's property. The Benneckers also alleged that they did not agree to settle all claims arising out of a liability claim for tree loss. The Benneckers' brief elaborates on this allegation in stating, "Plaintiffs maintain that they agreed to accept [$2,700] for the actual loss of the trees, and a monetary amount for future problems such as soil erosion as a result of the trees being cut down was never discussed, [nor was] monetary compensation for defendants' past actions that created a nuisance."

---

[1]The Benneckers' attorney at that time was later allowed to withdraw from their representation, and the Benneckers retained other counsel.

At a hearing on June 25, 2004, the parties stipulated that Jason Randolph, counsel for the Benneckers at the time of the negotiation, would testify that the parties reached an oral agreement in settlement of all issues and claims at the December 1, 2003 meeting at his office. The parties also stipulated that Mr. Bennecker would testify that the parties did not reach such an agreement. No witnesses testified at the hearing. After considering the stipulated testimony, arguments of counsel, and motions and exhibits in the record, the trial court ruled that the evidence preponderated in favor of a finding that the parties did reach an enforceable settlement agreement wherein the Benneckers agreed to settle all claims and issues for the sum of $2,700 plus court costs.

## II. Issue for Review

The Benneckers appeal, raising the issue, which we restate, of whether the trial court erred in holding there was an enforceable settlement agreement that disposed of all claims and issues between the parties.

## III. Standard of Review

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993).

## IV. Enforceability of Settlement Agreements

Our analysis begins with the proposition that "[a] compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law." *Environmental Abatement, Inc. v. Astrum R.E. Corp.,* 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000). The requirements for a valid contract are well-established:

> While a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.

*Johnson v. Central Nat'l. Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962). Our courts "retain the inherent power to enforce agreements entered into in settlement of litigation pending before them," and this power exists "even if the parties' agreement has not been reduced to writing." *Anglo-Danish Fibre Inds., Ltd. v. Columbian Rope Co.,* No. 01-2133 GV, 2002 WL 1784490 at *3 (W.D.

Tenn. filed June 21, 2002); *see also Wallace & Wallace, Inc. v. Rosengreen,* 1987 WL 5336 at *2 (Tenn. Ct. App. E.S. filed Jan. 16, 1987).

Since the trial court had the authority to enforce the oral settlement agreement, we must review the evidence to determine whether the proof at trial preponderates against the decision of the trial court that there was an agreement reached by the parties to settle all of the issues in controversy.

It was stipulated that Jason Randolph, the attorney for the Benneckers at the time of the negotiations, would testify that there was a settlement as to all issues. Conversely, it was stipulated that Mr. Bennecker would testify that there was no settlement as to all issues. Jason Randolph's testimony was supported by several undisputed facts. After the agreement was reached, the depositions were cancelled. Following the cancellation of the depositions, the Fickeissens' attorney sent a confirmation letter to Attorney Randolph. The letter, dated the same day of the negotiations (December 1, 2003), stated:

> This letter is to confirm settlement of the above referenced case for the amount of $2,700.00 plus court costs. I am also confirming that you are preparing the permanent injunction for <u>both</u> parties in this matter.
>
> Attached please find an Order of Compromise, Settlement and Dismissal, and Release of All Claims in regards to the above-captioned matter. If the Order meets with your approval, please have your client sign the faxed Release. Please sign the Order and return it and the signed Release to me.

(Emphasis in original).

Attorney Randolph then drafted a document styled "agreed permanent injunction" which, as stated, enjoined and restrained the parties from "in any manner directly or indirectly vandalizing, damaging, littering, or otherwise maliciously and unlawfully depriving the other party of the use of the property of said other party[,] as well as causing bodily harm or fear of bodily harm to the other party or their pets."

It is apparent from our review of the entire record and the Benneckers' brief that the primary point of contention before the trial court and on appeal involves the Bennekers' argument that they did not agree to be bound by the terms of this mutual injunction. They assert that the evidence preponderates in favor of a finding that there was never a "meeting of the minds" on this point, and thus the alleged oral settlement contract fails. We disagree.

As the trial court noted, the injunction at issue was drafted by the Benneckers' own attorney, Jason Randolph. As already stated, it was stipulated that Mr. Randolph, who subsequently was

-4-

relieved from representation of the Benneckers, would testify that the parties reached an agreement in settlement of all claims.

The Benneckers have consistently taken the position, as stated in their motion to deny enforcement of the settlement agreement, that the parties reached an agreement as to the compensatory damages and court costs that the Fickeissens would pay. The Fickeissens argue that they did not agree to settle only a portion of the claims against them, ostensibly leaving the remainder for trial, nor would they have ever considered doing so. On a related point, the trial court found it significant that the depositions were cancelled after the negotiation, stating as follows:

> I mean, you go to depositions and you get started negotiating, and you don't take depositions. What does that mean? That means you've come to an agreement, it's the only thing it CAN mean, that is the only thing it CAN mean.

[Emphasis in original].

We agree with the trial court's reasoning that the fact that depositions were cancelled suggests that the parties reached an agreement in settlement of all claims. If any issues had remained "on the table," it would be difficult to understand why the parties did not continue with the depositions as scheduled. Further, there is no valid explanation as to why the Fickeissens would agree to pay damages to the Benneckers *and* the court costs without obtaining a full resolution of all issues and ending the case. Moreover, the Benneckers' attorney drafted a mutual restraining order consistent with the agreement asserted by the Fickeissens. Based on our careful review of the evidence in the record, we hold that the evidence does not preponderate against the trial court's ruling that the parties reached a valid and enforceable oral settlement agreement whereby the Benneckers agreed to settle all their claims against the Fickeissens for a sum of $2,700, and the parties agreed to the mutual injunction enjoining them from illegally entering or causing damage to the property of the other party.

In their brief, the Benneckers argue that it was error for the trial court not to have ruled on the property boundary line dispute. However, the trial court effectively disposed of the boundary line issue in ruling that *all* claims, including the boundary line dispute, were settled by the parties' agreement. The evidence does not preponderate against the trial court's conclusion on this issue. We find no error in the trial court's judgment.

For the aforementioned reasons, the judgment of the trial court is affirmed and the case remanded for collection of costs below. Costs of appeal are assessed to the Appellants, Charles Samuel Bennecker and Robbie Bennecker.

_____
SHARON G. LEE, JUDGE