IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2024 Session

## DAVID HAYES v. EXTREME EXCAVATION, LLC

**Appeal from the Circuit Court for Washington County**
No. 41516      Suzanne Cook, Judge

_____

### No. E2023-01435-COA-R3-CV

_____

A property owner filed suit against a contractor, asserting that a driveway built by the contractor was defective. The contractor filed a counterclaim against the property owner, seeking compensation for the balance owed for the driveway and additional work the contractor had done on the property. Prior to trial, the contractor made a motion to enforce a purported settlement agreement between the parties. The trial court denied the motion. After a trial on the merits, the court awarded the property owner the cost of repairing the driveway and dismissed the contractor's counterclaim. The contractor appealed the court's order. Because we conclude that the trial court should have granted the contractor's motion to enforce the parties' settlement agreement, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., joined. ANDY D. BENNETT, J., filed a separate dissenting opinion.

John S. Taylor, Jonesborough, Tennessee, for the appellant, Extreme Excavation, LLC.

Mark W. McFall, Johnson City, Tennessee, for the appellee, David Hayes.

### OPINION

FACTUAL AND PROCEDURAL HISTORY

David Hayes moved to Tennessee in 2021 and purchased property in Jonesborough, where he planned to construct a house. The property was undeveloped, and the house's planned location was to be over three hundred feet from the main road, so Mr. Hayes wished to build a driveway from the planned site to the road. In addition, Mr. Hayes wanted a parking area built near the house large enough to park a truck and camper.

Mr. Hayes began searching online for driveway construction companies and found Extreme Excavation, LLC ("Extreme Excavation"). Around October 10, 2021, Mr. Hayes contacted Joe Layne, Extreme Excavation's owner, to discuss hiring the company to construct the driveway and parking area. The next day, Mr. Layne came to the property. At this initial meeting, Mr. Hayes told Mr. Layne that he wanted a driveway made with a base of crushed shell compacted with a 26,000-pound roller topped with a mix of small gravel and rock dust commonly known as "crusher run." Mr. Layne told Mr. Hayes that he estimated that the driveway would require about six inches of gravel. About four days later, Mr. Layne told Mr. Hayes that the job would cost $15,000 for materials, labor, and equipment rental and would take between seven and ten days to complete. After seeking other estimates and speaking to the contractor building his house, Mr. Hayes hired Extreme Excavation to construct the driveway.

Extreme Excavation began work around October 21, 2021, and finished the job on December 8, 2021, taking longer than anticipated. Because of the design of the parking area, Extreme Excavation built multiple retaining walls to which the parties had not previously agreed. The retaining walls were needed because Extreme Excavation excavated topsoil near the home to make two separate level parking areas, with the area closer to the home being lower than the other. Extreme Excavation built one retaining wall between the two parking areas and another retaining wall that wrapped around the back corner of the upper parking area (opposite the house) and down the driveway towards the road. Upon seeing the finished parking area, Mr. Hayes expressed concern that the retaining walls surrounding the parking area and driveway were unfinished and made of bare dirt. In response to this concern, Mr. Layne replied that since the walls were made of red clay, they would not erode. During the driveway construction, Extreme Excavation also did other work on the property.

After completing the work in December, Mr. Layne gave Mr. Hayes an invoice backdated to October 25, 2021 that described the work as:

> Finish Driveway <u>240 tons</u> of shell <u>110 tons</u> of Crusher & Run
> Dig Water Line & Electric Line Dig Pad for Camper
> Cleaned out Footers ReDug Footers Poured Footers. Dug out and
> Put 2" Rock at entrance.

The invoice itemizes the first two lines as totaling $15,000 and the last two lines as totaling $1,500. Based on this itemization, the original work included constructing the driveway, digging the water and electric lines, and digging the pad for the camper. The additional work, therefore, included cleaning out the footers for the home, digging them deeper, and putting two inches of gravel at the driveway's entrance from the road. The invoice also reflected that Mr. Hayes had previously paid $11,500, leaving a balance of $5,000.

While Mr. Hayes acknowledged that Extreme Excavation had completed the work, he was unsatisfied with its quality and raised several issues with Mr. Layne. To rectify the problems, Mr. Layne agreed to bring five more truckloads of gravel and a larger roller to the property. Sometime after Mr. Layne agreed to complete the remedial work, but before the work began, Mr. Hayes's homebuilder brought a concrete truck onto the property, damaging the driveway. Extreme Excavation then repaired the damaged area. Several days later, Mr. Hayes inquired when the remaining remedial work would begin. Mr. Layne replied that, before he started the work, Mr. Hayes would need to pay the remaining balance, a condition Mr. Hayes refused. After this, Mr. Layne never worked on the driveway again. Instead, Mr. Hayes hired three other contractors to continue the work.

On February 10, 2022, Mr. Hayes filed a civil summons in the General Sessions Court for Washington County against Extreme Excavation, seeking $15,000 in damages from hiring other contractors to repair the driveway and parking area. Under the section titled "reason for bringing this to court," Mr. Hayes wrote: "He [Extreme Excavation] was hired to install a road. Road is failing, refuses to fix road without payment in full." On February 28, 2022, Extreme Excavation filed a counterclaim against Mr. Hayes, seeking the remaining balance on the invoice and payment for additional work completed. On March 21, 2022, Mr. Hayes filed a motion to transfer the action to circuit court. The action was transferred by an agreed order to the Circuit Court for Washington County on April 11, 2022. Extreme Excavation then filed a motion to amend its complaint to include claims of unjust enrichment and quantum meruit.[1]

Subsequently, the parties engaged in settlement negotiations via their attorneys. By letter dated October 14, 2022, Mr. Hayes's attorney made an offer of compromise, which included the following terms:

> David Hayes would pay Extreme Excavation, LLC the total sum of Fifteen Thousand and No/100 Dollars ($15,000.00) in full and final settlement of all claims;
> The parties would execute a Settlement Agreement containing mutual general releases and there would be no admission of liability; and
> An Agreed Order of Dismissal With Prejudice would be signed by the parties' attorneys and filed with the Court.

Extreme Excavation's attorney replied by letter dated October 19, 2022 with the following rejection and counteroffer:

---

[1] The record on appeal does not include an order granting this motion. Regardless of whether the trial court granted the motion, however, there is ample evidence that the counterclaims of unjust enrichment and quantum meruit were tried by consent. *See* Tenn. R. Civ. P. 15.02; *McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997) ("Generally speaking, trial by implied consent will be found when the party opposed to the amendment knew or reasonably should have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby.").

Respectfully, we would reject the sum offered in settlement and would counter with twenty-five thousand dollars ($25,000), which is still significantly less than Extreme Excavation believes it provided in goods and services to your client.

The remainder of your offer of settlement is fine, though we believe your client should pay the Court Costs. (Each party could pay their own discretionary costs and attorneys fees.)

On October 22, Mr. Hayes's attorney emailed Extreme Excavation's attorney the following:

My client has instructed me to accept your counteroffer as stated in your letter dated October 19, 2022 and agrees to pay your client the sum of $25,000.00. I will not be back to my office until October 31, 2022 and we can finalize the settlement when I return. Thanks.

However, by letter dated November 4, 2022, Mr. Hayes's attorney sent another letter to Extreme Excavation's attorney stating that Mr. Hayes had withdrawn his acceptance of the counteroffer.

On November 18, 2022, Extreme Excavation filed a motion to enforce the settlement agreement, relying on the foregoing communications between counsel. The trial court held a hearing on the motion on November 30. In its order denying the motion, the court stated as follows: "The Court respectfully denies the Motion to Enforce Settlement Agreement on the basis that there was no 'agreement' for the Court to enforce until the 'Settlement Agreement' in Plaintiff's offer of October 14th, 2022, had been entered into by the parties. This was not done." Subsequently, the case was tried, resulting in a bench verdict in favor of Mr. Hayes in the amount of $17,400.

Extreme Excavation timely appealed, presenting the following issues, which we have restated, for our review: (1) whether the trial court was correct in overruling the pre-trial motion of Extreme Excavation to enforce a settlement agreement between the parties; (2) whether the trial court was correct in awarding Mr. Hayes $17,400 in damages; and (3) whether the trial court erred in denying Extreme Excavation any amount on its counterclaim.

STANDARD OF REVIEW

We review the findings of fact by a trial court in civil actions de novo upon the record, with a presumption that the findings are correct, unless the preponderance of the evidence indicates otherwise. Tenn. R. App. P. 13(d); *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). The trial court's conclusions of law are reviewed de novo, with no

- 4 -

presumption of correctness.  *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

ANALYSIS

The first issue presented is whether the trial court erred by not enforcing the settlement agreement.  It is well-settled in Tennessee that "[a] compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law." *Env't Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000).  The requirements of a valid contract are also well-established:

> While a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.

*Johnson v. Central Nat'l Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962).  Our courts "retain the inherent power to enforce agreements entered into in settlement of litigation pending before them," and this power exists "even if the parties' agreement has not been reduced to writing." *Anglo-Danish Fibre Inds., Ltd. v. Columbian Rope Co.*, No. 01–2133 GV, 2002 WL 1784490, at *3 (W.D. Tenn. June 21, 2002).  The determination as to whether the parties entered into an enforceable contract is a question of law, which we review de novo. *Id.*

Extreme Excavation contends on appeal that the communications between the parties' attorneys contained all the material terms of the settlement, making the correspondence an enforceable contract.  We agree.  The October 14 letter from Mr. Hayes's attorney was an offer.  Extreme Excavation's attorney's response of October 19 was a rejection and a counteroffer, which Mr. Hayes's attorney accepted on October 22.  Thus, a valid contract was formed on October 22, whereby the parties agreed that Mr. Hayes would pay Extreme Excavation $25,000; the parties would execute a written settlement agreement and release; each party would bear their own attorney fees and discretionary costs; and Mr. Hayes would pay court costs.

In support of its argument, Extreme Excavation relies on *Beaman Pontiac Co. v. Gill*, No. M1999-00666-COA-R3-CV, 2000 WL 502822 (Tenn. Ct. App. Apr. 28, 2000), and the majority of this Court finds the case persuasive.  In *Beaman,* Mr. Gill sold a car to Beaman Pontiac that had a salvaged title.  Once this was discovered, Beaman sued Mr. Gill.  Through their attorneys, the parties reached a settlement agreement that was reduced to writing, wherein Mr. Gill would pay a certain sum to Beaman.  Beaman's counsel prepared a written settlement agreement, which was forwarded to Mr. Gill's counsel, who

approved the document. The settlement agreement was executed by Mr. Gill and returned to Beaman's counsel with a check for the settlement amount. After Mr. Gill's counsel mailed the document and check but before it had been received by Beaman's counsel, Mr. Gill's counsel faxed Beaman's counsel a letter stating that Mr. Gill was "revoking" the settlement. This Court ultimately upheld the settlement agreement. Although this particular agreement had been reduced to writing, that was not material to our decision, and we determined that

> the mailed "acceptance" of the settlement agreement between counsel represents the culmination of their bargaining by phone and letter. Counsel for both parties state in their affidavits that, following the communication of [counsel's] final offer of settlement and prior to the mailing of the executed agreement, [opposing counsel] indicated the acceptability of the contract terms. Under the circumstances the effective acceptance occurred during these prior telephonic and written conversations, not in the mailing of the settlement form executed per these communications…. The agreement was in fact a valid contract for compromise and settlement enforceable by motion in the instant action. The document signed by the parties was merely a memorandum of their oral agreement.

*Id.* at *2.

In the present case, the dissent contends that the parties did not reach a valid settlement agreement because there were still terms remaining to be decided, as evidenced by Mr. Hayes's attorney's comment that "we can finalize the settlement when I return." It is well-settled that contracts must have terms of sufficient definiteness to allow courts to give them exact meanings. *United Am. Bank of Memphis v. Walker*, 1986 WL 11250, at *1 (Tenn. Ct. App. Oct. 10, 1986). Here, however, neither Mr. Hayes nor the dissent adequately explains what terms remained to be decided. The parties agreed that Mr. Hayes would pay $25,000 to Extreme Excavation; all parties would dismiss their claims and execute releases; Mr. Hayes would pay court costs; and the parties would pay their own discretionary costs and attorney fees. Despite Mr. Hayes's attorney's statement about future finalization of the settlement, the essential terms were already finalized. The only step remaining was for the parties to put their agreement in writing and sign the agreement, a step that *Beaman* makes clear is not required for a determination that a contract had already been formed. Given that this was a straightforward breach of contract claim and counterclaim for monetary damages, there is simply nothing left for the parties to agree upon.

The majority's decision on the motion to enforce settlement agreement is dispositive in this case. Accordingly, the remaining issues are pretermitted.

CONCLUSION

The judgment of the trial court is reversed.  The case is remanded to the trial court for entry of an order consistent with this opinion.  Costs of this appeal are assessed against the appellee, David Hayes, for which execution may issue if necessary.


_____
KRISTI M. DAVIS, JUDGE